*1472 OPINION

Per Curiam:

On December 31, 1989, appellant George W. Hammerstein and his wife, Venita, were invited guests at respondent Nevada Landing Hotel and Casino (Nevada Landing). At approximately 1:30 a.m. on the morning of January 1, 1990, a fire alarm sounded, and the hotel guests were evacuated. The elevators shut down when the alarm sounded, and Hammerstein was forced to use the stairs to evacuate the hotel. While descending the stairs, he slipped and twisted his ankle. Upon returning to his room, he noticed that a blister had formed on the injured foot. This blister later resulted in a gangrenous infection.
Hammerstein filed a complaint against Nevada Landing under tort theories of negligence, res ipsa loquitur, and strict liability. Nevada Landing filed a motion for summary judgment, which the district court granted. Hammerstein appealed to this court claiming that a triable issue of material fact exists in his case. We agree and accordingly reverse the district court’s order.

FACTS

On December 30, 1989, Hammerstein and his wife checked in to the Nevada Landing as invited guests. When checking in, Hammerstein was informed that he had been assigned a room on the fourth floor. Hammerstein, who was approximately seventy years of age at the time of the incident, is a diabetic. It was his understanding that this condition made it inadvisable for him to walk up and down stairs.
*1473 At that time, Hammerstein maintains that he informed Nevada Landing’s desk clerk of this medical condition. Nevada Landing claims that when Hammerstein was told there were no rooms available on the main floor, he elected tp accept the room on the fourth floor. Mrs. Hammerstein, however, testified that the desk clerk told them that there was an elevator available and that they would not have to climb stairs. According to Mrs. Hammerstein, the desk clerk indicated that if they did not accept the fourth floor room, they would have to leave.
After the New Year’s celebration, Hammerstein and his wife went up to their room to retire at approximately 1:10 a.m. At approximately 1:20 a.m., on the morning of January 1, 1990, a fire alarm went off in Nevada Landing causing the evacuation of the hotel.
Hammerstein stated that his wife opened the room door, and they saw people running down the hall past their door. He did not smell smoke or see a fire. He did not see any of Nevada Landing’s staff or try to call down to the desk to find out if there was a fire. Since returning to the room, he had only taken his walking shoes off, so he put them back on and headed out of the room.
The elevators of the hotel automatically shut off as a result of the fire alarm. This was mandated by the Uniform Fire Code and Uniform Building Code as adopted in the fire code of Clark County, Nevada. Hammerstein was forced to evacuate the hotel by walking down four flights of stairs. He described the stairs as being steep and metal. Hammerstein stated that he went down the stairs by holding onto the banister and going down one step at a time. In the process of walking down the stairs, Hammerstein twisted his ankle when his foot slipped off a stair. However, Hammerstein could not pinpoint anything specific that made him slip. He did not strike his ankle on anything; he simply twisted it.
By the time he got all the way down the stairs and out of the hotel, the alarm was still sounding. Hammerstein estimated that the alarm rang for about forty-five minutes. After standing outside for about twenty minutes, a member of the hotel’s staff came out and told the patrons that the alarm was false, the elevators were working, and everyone could go back to their rooms. While outside with the other guests, Hammerstein remembers another patron commenting that this fire alarm was about the sixth fire alarm at Nevada Landing since it opened in August of 1989. At that point, Hammerstein and his wife went back to their room.
When he got back to his room, Hammerstein noticed that a tiny blister, no more than three-eighths of an inch long and one-sixteenth of an inch wide, had formed on his heel. Additionally, his ankle was already swollen from being twisted. He did not fill out any kind of complaint form or notify anyone at Nevada Landing. He put a bandage on the blister and went to bed. In the *1474 morning, he noticed the blister had burst. Again, he only put a bandage on the blister.
After the Hammersteins checked out of Nevada Landing, they went to Laughlin, Nevada, and stayed at the Pioneer Club for the nights of January 1 and 2, 1990. Although the blister had burst, Hammerstein did not seek any medical attention in Laughlin because he claimed he “didn’t know about these things.”
Within a week of returning home from Laughlin, Hammerstein sought medical attention for the infected blister on his heel. This blister quickly developed into an infected ulcer on the foot, eventually turning into a gangrenous infection. The infection was exacerbated by his preexisting medical condition, diabetes melli-tus, which hinders circulation in his lower extremities.
The fire alarm system in place at Nevada Landing at the time of Hammerstein’s accident was called the Identifire System 2 and was manufactured by a company named Gamewell. According to Nevada Landing, it was approved by the Clark County Fire Department for operation at the time the hotel opened. In December of 1990, Gamewell replaced the original circuit board in the Identifire because the original board was malfunctioning. In December of 1991, Industrial Electronics replaced one of the electronic cells in the panel and did other trouble-shooting work on the system because the mechanism that controlled the circuit board had failed. The problem Industrial Electronics identified was in the main panel.
Nevada Landing’s engineering log recorded the times and reásons that the fire alarm had gone off. The log revealed that on December 30, 1989, at 1:00 a.m., the fire alarm system was set off by a little boy pulling one of the manual fire alarm boxes. However, the log entries for the night of Hammerstein’s accident do not reflect a fire alarm occurring, resulting in a question as to whether the alarm on New Year’s Eve was recorded in the log as occurring on the night of December 30, 1989.
In the record, Hammerstein includes the affidavit of his expert discussing Nevada Landing’s fire alarm system. The expert had been employed in fire protection services from 1957 to the time of his affidavit. Based on a review of the engineering logs, the expert concluded that the system went off at least eleven times in a three-month period, approximately once every ten days. The engineering logs identify four of these alarms as originating at manual pull stations. The expert also noted from the logs that at one time the system was in a condition of “un-normal” operation for ten days, indicating an inherent fault in the fire alarm system. After reviewing the evidence in the engineering log, the expert concluded that this number of false alarms was excessive. He also claimed that no evidence in any of the documents supplied by *1475 Nevada Landing indicated that it had taken any action to remedy this most serious problem.
Hammerstein filed a complaint against Nevada Landing on November 26, 1991. He asserted four causes of action. The first was a standard negligence action. Second, Hammerstein sued under strict liability claiming that a premises as well as a product can give rise to strict liability. Third, Hammerstein claimed that Nevada Landing, as a hotel, was “under a higher duty to recognize and prevent unreasonable risks of harm to patrons.” Finally, Hammerstein claimed that Nevada Landing was negligent under the theory of res ipsa loquitur.
Nevada Landing filed a motion for summary judgment. In deciding the motion for summary judgment, the court stated that Hammerstein’s argument presented a “very small” triable issue of fact. The court was referring to Hammerstein’s argument that Nevada Landing had experienced several false alarms prior to this incident, and the hotel should have known that if the false alarms continued somebody would get hurt trying to evacuate the premises. Despite this issue of fact, the district court found no negligence on Nevada Landing’s part and granted Nevada Landing’s motion for summary judgment. The court stated that nothing indicated that “there is any great insurable guarantee that a fire alarm will not go off whether it’s done by persons living in the hotel or whether it’s done [sic] off on its own.”

DISCUSSION

The district court erred in concluding that no evidence of a triable issue of material fact was presented regarding Nevada Landing’s duty and breach of duty to Hammerstein under a standard negligence theory

We now consider the merits of Hammerstein’s first cause of action, standard negligence.[1] To recover under a negligence theory, the complainant must prove four elements: (1) that defendant owed him a duty of care; (2) that defendant breached this duty of care; (3) that the breach was the legal cause of plaintiff’s injury; and (4) that the complainant suffered damages. Doud v. Las Vegas Hilton Corp., 109 Nev. 1096, 1100, 864 P.2d 796, 798 (1993). No question exists as to whether Nevada Landing owed Hammerstein a duty of care. In Nevada, proprietors owe their *1476 invitees a duty to use reasonable care to keep the premises in a reasonably safe condition for use. Id. at 1101, 864 P.2d at 799.
However, the question here is whether Nevada Landing breached this general duty and if this breach was the proximate cause of Hammerstein’s injury. Hammerstein argues that because Nevada Landing had past problems with its fire alarm system, it breached the duty of care owed to him. He asserts that Nevada Landing should have known that if the problems causing the false alarms were not remedied, someone would be injured in trying to escape from a possible fire. Evidence from the engineering log indicates that alarms had previously gone off with no explanation. We conclude that this evidence indicates that Nevada Landing may have breached its duty of care to Hammerstein by not acting reasonably to remedy a possible problem with its system.
However, that Nevada Landing may have failed to act reasonably in maintaining its fire alarm is only one element of this asserted standard negligence case. The unreasonable behavior must also actually cause the injury. Nevada Landing claims that Hammerstein’s injury was not caused by any negligence on Nevada Landing’s part but by his own failure to use due care while descending the stairwell. In determining causation, Nevada Landing did not have to foresee the extent of Hammerstein’s harm or the manner in which the harm occurred; it only needed to foresee that its negligent conduct would cause a particular variety of harm to a certain type of plaintiff. Sims v. General Telephone & Electric, 107 Nev. 516, 525, 815 P.2d 151, 157 (1991).
It should have been foreseeable to Nevada Landing that if its fire alarm system was unreasonably faulty, harm to a certain type of plaintiff, i.e., one of its guests, could result. Also, this particular variety of harm, injuring an ankle or foot on the way down a stairwell, is a foreseeable variety of harm in this circumstance. The extent of the infection on Hammerstein’s leg may not have been foreseeable, but the underlying injury should have been. Cf. Tracy v. Village of Lombard, 451 N.E.2d 992, 997, 1001 (Ill. App. Ct. 1983) (where it was foreseeable that the plaintiff’s crutch would catch in a sidewalk crack, liability for the full extent of plaintiff’s injuries followed).

CONCLUSION

We conclude that the district court erred in granting Nevada Landing’s motion for summary judgment because evidence in the record indicates a triable issue of material fact exists as to *1477 whether the false alarms were due to a fault in the Identifire system which Nevada Landing unreasonably failed to remedy.
Accordingly, we reverse the district court’s order with regard to Hammerstein’s standard negligence claim and affirm the district court’s order as to Hammerstein’s other causes of action. We remand this matter to the district court for further proceedings consistent with this opinion.

 We have considered appellant’s claims of error in regard to the district court’s grant of summary judgment with respect to the other causes of action. We have concluded that these claims have no merit and that the district court did not err in granting summary judgment with respect to these claims.