*966 OPINION
By the Court,
Shearing, J.:
On December 9, 1988, appellant Penny R. Scialabba, was a resident of Summerhill Pointe Apartments in Las Vegas, Nevada. On that evening, Scialabba returned home from work following a short trip to the grocery store. Just after unlocking the door of her apartment, Scialabba was assaulted from the rear, stabbed in the back and then pushed into her apartment. Once in her apartment, Scialabba received multiple stab, slash, and defensive wounds. Scialabba is permanently disfigured as a result of the attack.
*967 The assailant, Stanley Bernard Harris, also a resident of Summerhill Pointe Apartments at that time, had hidden in a vacant apartment across the hall from Scialabba’s apartment in preparation for the attack. Harris gained access to the vacant apartment by simply opening the door, as it was unlocked. Harris was tried and convicted of attempted murder and is presently serving time in the Nevada State Prison.
At the time of the attack, the apartment building (one of 18 in a complex) was newly constructed and only a few of the units were occupied by tenants. By October 1988, the apartment building had been substantially completed with the exception of “punch list” items, including installing hardware, adjusting doors, and ensuring the functioning of the electrical outlets. On November 2, 1988, the Clark County Building Department approved the buildings for occupancy. Scialabba and Harris signed leases in mid-November, only one month prior to the attack.
Scialabba brought a negligence suit for money damages against the owner of Summerhill Pointe Apartments, the property management company, the security company, and respondent Brandise Construction Company (“BCC”). Scialabba settled her suit against the property owner and the property management company on the eve of trial. The district court granted summary judgment in favor of the security company, which this court affirmed. Thus, the only remaining action is against the construction company, respondent BCC.
Scialabba’s negligence action against BCC is based upon its failure to lock the doors after working on “punch list” items in the vacant apartments. Just prior to trial, BCC filed its third motion for summary judgment. BCC asserted that it owed no contractual or other duty of care to Scialabba, citing a factually similar case, Doe v. Linder Const. Co., Inc., 845 S.W.2d 173 (Tenn. 1992).
The district court granted BCC’s motion for summary judgment, concluding that Harris’s criminal act was not foreseeable. The district court analyzed foreseeability in the context of both duty and proximate cause. It relied heavily upon the rationale of the Linder case from the Tennessee Supreme Court to reach its decision.
On appeal, Scialabba contends that the district court erred in granting summary judgment, arguing that BCC retained control over the property and that the criminal attack was reasonably foreseeable and therefore, BCC owed a duty to Scialabba comparable to the property owner’s duty. Scialabba further asserts that BCC breached its duty by failing to lock the doors to keep the premises secure and that the breach proximately caused her injuries.
*968 BCC contends that summary judgment was proper because it owed no duty to Scialabba, legal or otherwise. BCC also asserts that Harris’s tenancy did not create a reasonably foreseeable probability of harm. BCC argues that an unlocked door to a vacant apartment is not the proximate cause of Scialabba’s injuries as a matter of law.
Summary judgment is only appropriate when a review of the record viewed in a light most favorable to the nonmoving party reveals no triable issues of material fact and judgment is warranted as a matter of law. Butler v. Bogdanovich, 101 Nev. 449, 451, 705 P.2d 662, 663 (1985); NRCP 56(c). “In determining whether summary judgment is proper, the nonmoving party is entitled to have the evidence and all reasonable inferences accepted as true.” Wiltsie v. Baby Grand Corp., 105 Nev. 291, 292, 774 P.2d 432, 433 (1989). On appeal, this court is “required to determine whether the trial court erred in concluding that an absence of genuine issues of material fact justified its granting of summary judgment.” Bird v. Casa Royale West, 97 Nev. 67, 68, 624 P.2d 17, 18 (1981). This court’s review of an order granting summary judgment is de novo. Tore, Ltd. v. Church, 105 Nev. 183, 185, 772 P.2d 1281, 1282 (1989).
Scialabba sued BCC on a theory of negligence. To prevail on a negligence theory, a plaintiff must generally show that: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach was the legal cause of the plaintiff’s injury; and (4) the plaintiff suffered damages. Perez v. Las Vegas Medical Center, 107 Nev. 1, 4, 805 P.2d 589, 590 (1991). In a negligence action, summary judgment should be considered with caution. See Sims v. General Telephone & Electric, 107 Nev. 516, 521, 815 P.2d 151, 154 (1991). In order to establish entitlement to judgment as a matter of law, a moving defendant must show that one of the elements of the plaintiff’s prima facie case is “clearly lacking as a matter of law.” Id. at 521, 815 P.2d at 154. Accordingly, the first inquiry is whether BCC owed any duty to Scialabba.
Whether a defendant owes a plaintiff a duty of care is a question of law. Dubus v. Dresser Industries, 649 P.2d 198, 202 (Wyo. 1982). As a general rule, a private person does not have a duty to protect another from a criminal attack by a third person. Kline v. 1500 Massachusetts Ave. Apartment Corp., 439 F.2d 477 (D.C. Cir. 1970). However, courts have imposed liability where a “special relationship” exists between the parties, includ *969 ing landowner-invitee, businessman-patron, employer-employee, school district-pupil, hospital-patient, and carrier-passenger. Id. at 482-83. The rationale behind the imposition of liability is that:
[S]ince the ability of one of the parties to provide for his own protection has been limited in some way by his submission to the control of the other, a duty should be imposed upon the one possessing control (and thus the power to act) to take reasonable precautions to protect the other one from assaults by third parties which, at least, could reasonably have been anticipated.
Id. Thus, the element of control is the pivotal factor in the determination of liability arising from certain relationships.
This court has addressed the duty of a landowner to protect against third-party criminal activity. Doud v. Las Vegas Hilton Corp., 109 Nev. 1096, 864 P.2d 796 (1993); Early v. N.L.V. Casino Corp., 100 Nev. 200, 678 P.2d 683 (1984). In Doud, this court stated that a landowner owes a duty to use reasonable care to keep the premises in a reasonably safe condition for use. However, the duty to protect from injury caused by a third person is circumscribed by the reasonable foreseeability of the third person’s actions and the injuries resulting from the condition or circumstances which facilitated the harm. Doud, 109 Nev. at 1101, 864 P.2d at 799. See also Moody v. Manny’s Auto Repair, 110 Nev. 320, 328-33, 871 P.2d 935, 940-43 (1990).
Thus, whether BCC owes Scialabba a duty of care turns on whether it exercised control over the premises and whether the criminal attack was reasonably foreseeable. We conclude that BCC exercised sufficient control over the premises in order to establish a duty to Scialabba. According to George A. Hunt, Esq., the attorney for BCC, “during the initial phases of construction, control was exclusively in the contractor. After they started moving tenants in, control was joint between the owner and the contractor. After the contractor quit the premises after completing all of the work, exclusive control shifted to the owner.” Between the time the apartment building was approved for occupancy in November 1988 and the “punch list” items were completed in February 1989, BCC and the property owner had joint control over the premises. At that time, BCC retained master keys to the finished, yet vacant, apartments. Joseph Brandise, the principal of BCC, stated in his deposition that one of his workmen was responsible for locking the doors to the vacant apartments at night and unlocking them in the morning. Given these facts, we conclude that BCC retained control over *970 the premises because BCC retained keys to the vacant apartments and was responsible for locking the doors at the time of the attack in December 1988.
Further, we conclude that criminal activity is foreseeable as a result of keeping the doors to the vacant apartments unlocked. As this court stated in Doud, “[t]he modern trend holds that foreseeability of a violent crime being perpetrated on a patron is not absolutely dependent upon notice of prior crimes of a similar nature occurring on or near the premises, but may also be determined from all of the circumstances present.” Doud, 109 Nev. at 1102, 864 P.2d at 799-80. Thus, according to Doud, foreseeability is determined on a totality-of-the-circumstances basis. Id.
Joseph Brandise stated that one type of criminal activity, theft, is a common problem in apartment developments; for example, refrigerators are often taken from vacant apartments. In addition, BCC employed one of its labor foremen, Joseph Chacon, as a night watchman primarily to prevent theft. Thus, criminal activity is foreseeable from the failure to keep doors to vacant apartments unlocked.[1] While one can argue that the specific type of criminal activity involved here, a violent assault, may not have been foreseeable, the fact that unsecured vacant apartments allow easy access to unwelcome third parties with nefarious intentions is sufficient to establish a foreseeable risk of harm to the tenants in the building.
We conclude that BCC owed a duty to Scialabba as a matter of law because it exercised control over the premises and the alleged failure to lock the doors to the vacant apartments created a foreseeable risk of criminal activity and harm to Scialabba. But see Doe v. Linder Const. Co., 845 S.W.2d 173 (Tenn. 1992) (holding that defendant construction company for housing development owed no duty in negligence action to plaintiff female homeowner, who was raped when defendant’s employee stole the key to plaintiff’s home from location within defendant’s control). Therefore, the district court erred in granting summary judgment because genuine issues of material fact remain as to whether BCC breached that duty and whether any breach proximately caused Scialabba’s injuries. See Doud, 109 Nev. at 1105, 864 P.2d at *971 801 (stating that questions of proximate cause and intervening cause are generally questions of fact and not of law, and thus they are best left for the jury to decide).
Scialabba also contends on appeal that District Court Judge Lehman should have been disqualified from her case. She asserts that Judge Lehman could not be impartial because he has several good friends who are involved in a companion case. The companion case is a declaratory relief action that the corporate owner of the apartment building complex, BHP Partners, and the individual partners filed against their errors and omissions insurance carrier, Brandise and Martinet Insurance. The principals of Brandise and Martinet Insurance are Harry Brandise and Loy Martinet, two very close friends of Judge Lehman. Harry Brandise is the brother of Joseph Brandise, the principal of BCC and a partner in BHP Partners. Judge Lehman recused himself from the declaratory relief action due to the involvement of his long-time friends, Harry Brandise and Loy Martinet.
On March 20, 1991, just one month prior to the scheduled trial date of April 22, 1991, Scialabba filed a motion to disqualify Judge Lehman, arguing that because Judge Lehman voluntarily recused himself in the declaratory relief action, he should be disqualified from her case. Judge Lehman filed an affidavit pursuant to NRS 1.235(5)(b),[2] stating that he “does not know of any statute, rule of court, ethical standard or other compelling reason to recuse himself from this case.” Judge Lehman further stated:
I want to point out that in the instant action, Brandise Construction Company, Inc., is a corporation in which Harry Brandise owns no interest. I point out further that I had not even been aware that Harry Brandise had a brother who is the principal in the Brandise Construction Company, Inc., a party in the instant action. Your affiant further add[s] that I have never met Joseph Brandise and thus [am] confident that I [have] no bias whatever in favor of Brandise Construction Company, Inc.
A hearing was held before District Court Judge Michael Wendell on Scialabba’s motion to disqualify Judge Lehman on April 11, *972 1991. On April 16, 1991, Judge Wendell issued an order denying the motion. On that very same day, Scialabba filed a Petition for Writ of Certiorari or Prohibition in this court, requesting this court to grant relief and prohibit Judge Lehman from sitting on the case. Scialabba v. Eighth Judicial District Court, Case No. 22069 (filed April 16, 1991). In a three-judge order filed April 17, 1991, this court denied the petition.
*971 (5) The judge against whom an affidavit alleging bias or prejudice is filed shall proceed no further with the matter and shall:
(b) File a written answer with the clerk of the court within 2 days after the affidavit is filed, admitting or denying any or all of the allegations contained in the affidavit and setting forth any additional facts which bear on the question of his disqualification. The question of the judge’s disqualification must thereupon be heard and determined by another judge agreed upon by the parties or, if they are unable to agree, by a judge. . . .
*972 We conclude that the decision to deny Scialabba’s motion to disqualify Judge Lehman is supported by substantial evidence. Judge Lehman stated that he did not know Joseph Brandise and that he knew of no compelling reason to recuse himself. Accordingly, Scialabba’s contention lacks merit and Judge Lehman should not have been disqualified from the instant case.
For the foregoing reasons, we reverse the order of the district court granting summary judgment and remand for further proceedings consistent with this opinion.
Young and Rose, JJ., concur.

Further, the record contains an exhibit entitled “Las Vegas Metropolitan Police Department Event Retrieval Summary Report,” showing that in the twelve months preceding the attack, the area encompassing the apartment building reported 571 crimes. Of the total number of crimes, there was one robbery, thirty-one burglaries, fifteen grand larcenies, two assaults, three batteries, seven instances of malicious destruction of property, and two prowlers.

NRS 1.235 sets forth the procedure for disqualifying judges other than supreme court justices. It states in pertinent part: