Louise KUSMIREK, Plaintiff,

v.

MGM GRAND HOTEL, INC.,
et al., Defendants.

MGM Grand Hotel, Inc., Third
Party Plaintiff,

v.

Gerald Machowsky, Defendant.

No. CV–S–97–148DWHLRL.

United States District Court,
D. Nevada.

Sept. 29, 1999.

Vincent A. Consul, Dickerson, Dickerson, Lieberman & Consul, Las Vegas, NV, for plaintiff.

Gregory M. Schulman, Wolfenzon & Volk, Las Vegas, NV, for defendant/third party plaintiff.

James Armstrong, Carrie McCrea Hanlon, Thorndal, Bacus, Armstrong & Balkenbush, Las Vegas, NV, for third party defendant.

### ORDER

HAGEN, District Judge.

Before the court are three motions for summary judgment and several motions in limine. Defendant MGM Grand Hotel, Inc. ("MGM") seeks summary judgment against plaintiff (# 53) and third party defendant Gerald Machowsky (# 54). Machowsky has filed a cross-motion for summary judgment against MGM (# 44). In addition, MGM has filed nine motions in limine on various topics.

### I.  Factual Background

This case concerns an accident which occurred on February 5, 1995 in the valet area in front of the MGM Hotel and Casino. On that date, Gerald Machowsky and his wife entered their car[1] in the valet area after it had been retrieved and left running by the valet. Machowsky testified that he knew his vehicle was running when it was delivered to him by the valet. After Machowsky and his wife fastened their seat belts, Machowsky put the vehicle into gear at which point it shot out and struck plaintiff Louise Kusmirek, age 71 at the time, who became pinned between the back of her car and the Machowsky vehicle. At the time of the accident Kusmirek was walking around the rear of her vehicle to the front passenger seat. As a result of the accident, Kusmirek's legs were injured, and she lost her left leg and underwent surgical amputation of her right leg above the knee. Although Machowsky believes that he had his foot on the brake when he put the vehicle into gear and that the vehicle malfunctioned, no indication of mechanical malfunction was detected upon inspection. Las Vegas Metropolitan Police Detective Steve Winne concluded Machowsky's misapplication of the pedals caused the accident.

### II.  Analysis

#### A.  Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party, *Zoslaw v. MCA Distr. Corp.,* 693 F.2d 870, 883 (9th Cir.1982), and for this purpose, the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Baker v. Centennial Ins. Co.,* 970 F.2d 660, 662 (9th Cir.1992). A material issue of fact is one that affects the outcome of the

---

1. This vehicle, a 1986 Oldsmobile Cutlass, was borrowed from Jacqueline Machowsky's mother, Betty Kalil, whom the Machowskys were visiting in Las Vegas.

litigation and requires a trial to resolve the differing versions of the truth. *S.E.C. v. Seaboard Corp.,* 677 F.2d 1301, 1306 (9th Cir.1982).

Once the moving party presents evidence that would call for judgment as a matter of law at trial if left uncontroverted, the respondent must show by specific facts the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

> [T]here is no genuine issue of fact for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* at 249–50, 106 S.Ct. 2505 (citations omitted). "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." *British Airways Board v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978). Moreover, if the factual context makes the nonmoving party's claim implausible, that party must come forward with more persuasive evidence than otherwise would be necessary to show there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987).

In a diversity case, substantive summary judgment issues are determined by state law. *Bank of California v. Opie,* 663 F.2d 977, 980 (9th Cir.1981).

## B. Negligent Design Claim

Because plaintiff has conceded that this claim is without merit, defendants are entitled to summary judgment on this claim.

## C. Negligence Claim

Plaintiff contends that defendant acted negligently in (1) delivering the vehicle to Machowsky with the engine running rather than turning off the ignition, (2) delivering the vehicle to Machowsky in an unsafe area, and (3) failing to provide supervision and additional personnel to regulate pedestrian and vehicular traffic during a busy check out period when traffic was heavy.

■ The elements of a negligence claim under Nevada law are: (1) that defendant owed plaintiff a duty of care; (2) that defendant breached that duty of care; (3) the breach was the actual cause of plaintiff's injury; (4) the breach was the proximate cause of plaintiff's injury; and (5) that plaintiff suffered damages. *Perez v. Las Vegas Medical Center,* 107 Nev. 1, 4, 805 P.2d 589 (1991).

### 1. Duty of care

■ Whether a defendant owes a plaintiff a duty of care is a question of law. *Scialabba v. Brandise Construction Co., Inc.,* 112 Nev. 965, 968, 921 P.2d 928 (1996). "In Nevada, a proprietor owes an invitee a duty to use reasonable care to keep the premises in a reasonably safe condition for use." *Doud v. Las Vegas Hilton Corp.,* 109 Nev. 1096, 1101, 864 P.2d 796 (1993). "However, the duty to protect from injury caused by a third person is circumscribed by the reasonable foreseeability of the third party's actions and the injuries resulting from the condition or circumstances which facilitated the harm." *Scialabba,* 112 Nev. at 969, 921 P.2d 928. On this issue, the Nevada Supreme Court has cited with approval the position of the Restatement (Second) of Torts. *Doud,* 109 Nev. at 1101, 864 P.2d 796. The Restatement provides:

> Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has

no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

Restatement (Second) of Torts § 344 cmt. f (1977).

Here, plaintiff argues that MGM had a duty to protect plaintiff from the sudden acceleration of Machowsky's vehicle in the valet area, whether the loss of control was due to misapplication of the pedals or mechanical malfunction. However, plaintiff failed to offer any evidence of past similar accidents involving MGM's valet area (or valet areas at other casinos or establishments) which would place MGM on notice that it should reasonably anticipate negligent conduct on the part of third parties or mechanical malfunctions likely to endanger the safety of visitors such as plaintiff. Cf. *Scialabba,* 112 Nev. at 970, 921 P.2d 928 (where testimony demonstrated that criminal activity is a common problem in apartment developments with vacant units, criminal assault on resident at new apartment complex due to contractor's failure to lock doors on vacant apartments was foreseeable); see also *Fawley v. Martin's Supermarkets, Inc.,* 618 N.E.2d 10, 13–14 (Ind.App.1993) (grocery store had no duty to invitees to protect them from runaway vehicle propelled onto the sidewalk in front of store by drunk driver where there was no evidence of past accidents involving vehicles and pedestrians using store's sidewalk). Moreover, although plaintiff cites to the case of *Stapp v. Hilton Hotels Corp.,* 108 Nev. 209, 826 P.2d 954 (1992) as supporting her position that MGM owed plaintiff a duty, with respect to the Ma-

chowsky vehicle, MGM correctly note that *Stapp* does not address this issue. Rather, *Stapp* concerned only the question of whether the defendant's motion to amend or alter judgment was timely filed.[2]

■ On the issue of foreseeability, plaintiff apparently relies on the deposition testimony of her expert, William Jackman, to defeat summary judgment. Jackman, a civil engineer specializing in accident reconstruction, testified in relevant part:

> [MGM] knew or should have known that the proper way of delivering a vehicle to an operator is for the attendant to turn off the engine, remove the keys before exiting the vehicle and turning it over to the patron or the operator.

> [MGM] knew or should have known that ... it is much safer for the vehicle to be turned over to the operator patron when that vehicle is first in line so that immediately upon entering the vehicle that patron can leave, not blocked by anybody, not having to vie for some available open slot with other people who may have the same problems, or the parking attendants, I'm sorry, the valet people.

Defendants object to the consideration of Jackman's testimony on the basis that Jackman is not competent to testify regarding valet procedures. Even if it is considered, however, this testimony alone falls short of demonstrating that the accident resulting from Machowsky's negligent misapplication of the pedals or a mechanical malfunction of Machowsky's vehicle in the valet area could have been reasonably foreseen by MGM. Cf. *Doud,* 109 Nev. at 1103, 864 P.2d 796 (casino had duty to prevent criminal assault in casino parking lot where there was evidence of past criminal activity in parking lot and on casino's premises, the nature of casino's business provided a fertile environment for criminal

---

**2.** The other case cited by plaintiff, *Mulraney v. Auletto's Catering,* 293 N.J.Super. 315, 680 A.2d 793 (1996), applies New Jersey law which differs from Nevada law in that business owners in New Jersey, unlike Nevada

business owners, owe a heightened standard of care to their patrons. Compare *id.* at 796 with *Coblentz v. HEREU Welfare Fund,* 112 Nev. 1161, 1170, 925 P.2d 496 (1996).

conduct, *and* the plaintiff's expert testified that (1) parking lot was known to be a dangerous place by casino management and (2) the robbery and attempted murder of the plaintiff *was foreseeable* given the substantial level of criminal activity occurring on casino's premises). Thus, plaintiff has failed to raise a genuine issue of material fact regarding MGM's duty to protect plaintiff from Machowsky's negligent conduct or mechanical malfunction after the vehicle was delivered to Machowsky.

## 2. Proximate Cause

■ Even assuming that plaintiff could establish that MGM owed plaintiff a duty of care and breached that duty, plaintiff is unable to show that MGM's conduct was the proximate cause of plaintiff's injuries because the sudden acceleration of the vehicle when Machowsky shifted gears was an unforeseeable, intervening cause of plaintiff's injuries. An act is a proximate cause of an injury where it appears that "the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." *Van Cleave v. Kietz–Mill Minit Mart,* 97 Nev. 414, 416, 633 P.2d 1220 (1981). "Whenever a new cause intervenes which is not the consequence of the first wrongful cause, and which is not under the control of the first wrongdoer, and which he could not with reasonable diligence have foreseen, and except for which the final catastrophe could not have happened, then such a result must be held too remote to furnish the basis of an action." *Id.*

In *Van Cleave,* the Nevada Supreme Court affirmed summary judgment in favor of the defendant where alcoholic beverages sold to a minor by the defendant were eventually consumed by another minor who injured the plaintiff while driving under the influence. The court reasoned that "[t]here is nothing to suggest that the respondents, in light of the circumstances, had any reason to foresee that the purchaser would deliver the beverages to another, or that that person or another to whom he might give the beverage might,

after becoming intoxicated, choose to drive and subsequently injure the appellant." *Id.* at 417, 633 P.2d 1220. It recognized that courts are reluctant to grant summary judgment in negligence cases because foreseeability, duty, proximate cause and reasonableness are usually factual questions for the jury but held that summary judgment was appropriate where the plaintiff as a matter of law could not prevail. *Id.*

In this case, the intervening cause of the accident and plaintiff's injuries was the vehicle's uncontrollable surge forward after Machowsky shifted gears. Although Machowsky testified that he had his foot on the brake pedal, no mechanical defect was found and the police concluded that Machowsky actually had his foot on the gas pedal when he shifted gears causing the vehicle to surge forward. Regardless of whether a mechanical defect or Machowsky's misapplication of the pedals caused the vehicle to suddenly accelerate and hit plaintiff, the acceleration of the car was caused by either of those two unforeseeable events, not by MGM's negligence, if any. As discussed above, no evidence of prior accidents nor any other evidence was introduced to support plaintiff's claim of foreseeability.

■ In addition, with respect to plaintiff's expert's testimony about the three precautionary measures that MGM should have undertaken, it is mere speculation that two of these measures—use of additional personnel in the valet area and delivery of the vehicle with the engine turned off—would have prevented the accident. First, even if MGM had supplied additional personnel to monitor and regulate cars and pedestrians in the valet area and one of those attendants directed Machowsky to exit the area around plaintiff's car, this conduct would not have prevented the sudden, uncontrollable acceleration of Machowsky's vehicle. Moreover, plaintiff does not suggest that an attendant would have instructed plaintiff not to enter her vehicle until Machowsky's car had exited the area. Nor would there have been any

reason for an attendant to do so without knowledge of any previous accidents because Machowsky's vehicle was parked well behind plaintiff's car.

■ Second, only plaintiff's expert's speculation supports the position that turning off the vehicle's engine and handing over the keys to Machowsky would have prevented the accident. Plaintiff's expert testified that this precautionary measure would have "slowed [the driver] down" and required him to "better appreciate what he was doing." If the cause of the acceleration was a mechanical malfunction, whether the driver was slowed down or appreciated what he was doing is irrelevant. Plaintiff, however, apparently seeks to have this court infer from her expert's testimony that if the cause of the acceleration was a misapplication of the pedals, Machowsky would not have misapplied the gas pedal if he first had to start the vehicle himself rather than enter it with the engine running. This inference assumes that Machowsky would have paid more attention to the pedals when starting the vehicle than when he did when shifting gears. Because Machowsky testified that when starting a car he normally puts his foot on the brake pedal, the same pedal he believed he was using when shifting gears, he could have misapplied the gas pedal initially when starting the car and then not known it until he shifted gears. Thus, it is mere conjecture that turning off the engine would have resulted in Machowsky using the proper pedal when shifting gears if, in fact, misapplication was the cause of the vehicle's sudden acceleration.

■ As to the third proposed precautionary measure, requiring MGM to deliver a valet-parked vehicle to the driver only when that vehicle is the first in line to exit the valet area, it would likely increase the inconvenience to drivers who would have to wait much longer for their cars and to MGM valet attendants who would waste time waiting with the vehicle in line until it could be returned to the driver, imposing upon MGM a burden completely out of proportion to the anticipated risk. See,

e.g., *Fawley*, 618 N.E.2d at 14 (where the plaintiff was injured in front of the defendant's store by drunk driver whose car was negligently propelled over curb onto sidewalk, the court held that "to require that business owners erect impregnable barriers separating the parking lots from their sidewalks would very likely increase the inconvenience and hazard to pedestrians and impose upon the owners a burden completely out of proportion with the anticipated risk"). Moreover, although such a measure may have prevented the particular type of accident causing plaintiff's injury (i.e., the pinning of plaintiff between her parked car and Machowsky's vehicle), it would not prevent the other accidents resulting from sudden acceleration of a vehicle at the end of the valet area, such as a collision with vehicles moving along the street or with pedestrians crossing the driveway of the valet area. Accordingly, plaintiff has failed to raise a genuine issue of material fact as to whether MGM's alleged negligence was the proximate cause of plaintiff's injuries.

## III. *Conclusion*

Accordingly, **IT IS ORDERED** that defendant MGM's summary judgment motion (# 53) against plaintiff be GRANTED.

Since MGM is entitled to summary judgment, **IT IS FURTHER ORDERED** that MGM's third party complaint against Machowsky is dismissed as moot.

**IT FURTHER IS ORDERED** that all other pending motions (# s 44, 45, 46, 47, 48, 49, 50, 51, 52, 54, 55) are DENIED as moot.