137 Nev., Advance Opinion 75

IN THE SUPREME COURT OF THE STATE OF NEVADA

PETSMART, INC.,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
TIMOTHY C. WILLIAMS, DISTRICT
JUDGE,
Respondents,
    and
JAMES TODD; AND RAPHAELA
TODD,
Real Parties in Interest.

No. 82454



FILED

DEC 09 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus challenging a district court order denying summary judgment in a tort action.

*Petition granted.*

Law Offices of Lane S. Kay and Lane S. Kay, Las Vegas; Amaro Baldwin, LLP, and Michael L. Amaro, Long Beach, California,
for Petitioner.

Claggett & Sykes Law Firm and Thomas W. Askeroth, Las Vegas,
for Real Parties in Interest.

BEFORE THE SUPREME COURT, PARRAGUIRRE, STIGLICH, and SILVER, JJ.

21-35059

*OPINION*

By the Court, SILVER, J.:

James Todd was sitting in his living room when his dog, Chip, suddenly attacked and bit James's arm, tearing it open. James's wife, Raphaela, had adopted Chip two days before from an independent pet-rescue organization holding an adoption event at a PetSmart store. The Todds later learned that Chip had previously been adopted and returned several times because of his aggressive behaviors and violent history, and they subsequently sued the rescue organization, PetSmart, and others. PetSmart filed a motion for summary judgment, asserting that there was no basis to hold it liable. The district court denied the motion. PetSmart now challenges that ruling by way of an original petition for a writ of mandamus.

To resolve this writ petition, we must decide a question of first impression for this court—namely, whether a pet store may be held liable under tort law where a dog adopted at the store through an adoption event conducted by an independent charitable organization later attacks and injures an individual. We hold that, as a pet store typically owes no duty to the individual in such circumstances, the store can be held liable only if it assumes a duty of care or has an agency relationship with the charitable organization that conducted the adoption event. Applying these principles, we conclude that PetSmart cannot be held liable because it did not assume a duty of care or have an agency relationship with the charitable organization. Accordingly, because the district court erroneously denied PetSmart's motion for summary judgment, we grant the petition.

 

## FACTS AND PROCEDURAL HISTORY

PetSmart, through its PetSmart Charities adoption program (collectively PetSmart), contracts with independent animal welfare organizations, called "agency partners," to find homes for homeless pets and thereby help end euthanasia as a population control method.[1] PetSmart's agency partners' vetting and prequalification process includes confirming the charity's 501(c)(3) status and liability insurance, a site visit, and an internet search of the organization by a PetSmart associate. After the vetting process, PetSmart provides the agency partner with a manual, which outlines policies and procedures for operating adoption events in the store, such as the cleaning and dress guidelines, but which does not control how the agency partner runs its adoption program.

PetSmart's agency-partner agreement clarifies that the agency partner is "fully responsible" for its adoptable pets, must conduct adoptions in designated areas, and must "use its own shelter adoption policies and procedures . . . [and] make the final decision in the placement of a pet." It also warns that the public might view agency partner volunteers as PetSmart employees when in fact they are not and prohibits the agency partner from interfering with PetSmart's business, taking PetSmart inventory, disparaging PetSmart, or selling products or competitive services while in a PetSmart store. The agreement also sets guidelines for how the agency partner must operate inside of PetSmart. For example, the agreement requires the area to be kept clean and the animals to be vaccinated and healthy, and it requires the agency partner to remove from the store any animal that shows signs of aggression. The agency partner

---

[1]In 2019, approximately 650,000 animals were adopted in North America through PetSmart's adoption program.



must require adopters to sign a PetSmart adoption release form and inform PetSmart of the adoption. Finally, the agreement states that it does not create "a legal partnership, joint venture, landlord-tenant or employee-employer relationship" between the agency partner and PetSmart and that the agency partner "is an Independent entity responsible for itself."

When an adoption occurs, the adopter has the option of signing up for PetSmart's Pet Perks membership, and the adopter may choose to provide PetSmart with their email and phone number in return for PetSmart store benefits. PetSmart also pays a sum to the agency partner for every adoption completed at a PetSmart store, and this sum increases when the agency partner reaches a certain threshold of adoptions. If a pet is returned to the organization, that organization may put the pet up for a subsequent adoption, and PetSmart has no measures in place to prevent agency partners from claiming an award for subsequent adoptions. PetSmart keeps copies of the adoption release forms, but it does not cross-reference those forms to determine whether the pet was previously adopted.

A Home 4 Spot (AH4S) acquired Chip, a large mixed-breed dog, from The Animal Foundation (TAF). TAF had adopted Chip out twice before, but both adopters returned Chip due to his aggressive behavior toward humans and other animals. TAF therefore determined that Chip was not adoptable. For reasons unexplained by the record, AH4S took Chip from TAF and placed him up for adoption at an adoption day event held at PetSmart. A family adopted Chip but returned him to AH4S less than a week later, reporting that Chip had growled at the children and chased the father around the house. AH4S again placed Chip up for adoption at an event conducted at PetSmart, where another family adopted him. But that family also returned Chip to AH4S, reporting that he unexpectedly attacked

the daughter, knocking her to the ground, biting her arm, and severely injuring her thumb.

AH4S then put Chip up for adoption again through an adoption day event held in the loading dock area of a PetSmart store. Raphaela Todd decided to adopt Chip because he acted very friendly toward Raphaela and her small dog. Raphaela worked with an AH4S associate who characterized Chip as "a gentle giant" and explained that Chip had previously been adopted and returned following a minor incident where Chip nipped a person who was teasing him. Raphaela signed a form that explained PetSmart was not affiliated with AH4S, wherein she released PetSmart and PetSmart Charities of liability related to Chip's adoption. Upon adopting Chip, Raphaela received a goody bag with PetSmart coupons and a PetSmart adoption kit.

Two days after adopting Chip, Raphaela and her husband, James Todd, were sitting in their living room when Chip, who was lying on the floor in front of James's chair, started growling at James. Before Raphaela could even call Chip's name, Chip suddenly lunged and bit James on his right forearm, trying to pull James to the ground and tearing deep, gaping wounds in James's arm. Raphaela tried to pry Chip's jaws open, receiving puncture wounds in the process. After Raphaela freed James, James ran into the backyard and Raphaela maneuvered herself and Chip into the garage. Chip continued trying to get back into the house to attack James. Animal Control later took the dog away.

The Todds filed a complaint for negligence, negligent infliction of emotional distress, and respondeat superior against PetSmart, AH4S, TAF, and others. Pertinent here, PetSmart moved for summary judgment, arguing it could not be held liable because it did not own or control Chip and was not involved with Chip's adoption. The district court conducted a

SUPREME COURT
OF
NEVADA

(O) 1947A

hearing and issued an order denying PetSmart's motion for summary judgment. The court found that PetSmart owed a duty to the Todds under *Wright v. Schum*, 105 Nev. 611, 781 P.2d 1142 (1989). The district court further found that there were genuine issues of material fact concerning a possible agency relationship between PetSmart and AH4S, the Todds' waiver, and PetSmart's vetting and prequalification procedures. PetSmart now petitions this court for writ relief, arguing that it did not owe the Todds a duty of care as a matter of law and had no agency relationship with AH4S.

## DISCUSSION

### We exercise our discretion to entertain the writ petition

"A writ of mandamus is available to compel the performance of an act which the law . . . [requires] as a duty resulting from an office, trust or station, or to control a manifest abuse or an arbitrary or capricious exercise of discretion." *Cote H. v. Eighth Judicial Dist. Court*, 124 Nev. 36, 39, 175 P.3d 906, 907-08 (2008) (internal quotation marks and footnote omitted) (alterations in original). Mandamus is an extraordinary remedy, available only when there is no "plain, speedy and adequate remedy in the ordinary course of law." NRS 34.170; *see also Cote H.*, 124 Nev. at 39, 175 P.3d at 908.

The decision to entertain a petition for a writ of mandamus is within our sole discretion. *Smith v. Eighth Judicial Dist. Court*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991). Generally, we do not consider writ petitions challenging a district court order denying summary judgment. *Smith v. Eighth Judicial Dist. Court*, 113 Nev. 1343, 1344, 950 P.2d 280, 281 (1997). However, we may consider such a petition where doing so is in the interests of judicial economy and either there is no factual dispute and summary judgment is required pursuant to clear authority, *id.*, or the petition presents a matter of first impression that may be dispositive in the

case, *see Humboldt Gen. Hosp. v. Sixth Judicial Dist. Court*, 132 Nev. 544, 547, 376 P.3d 167, 170 (2016).

Here, the essential facts are not in dispute, and PetSmart's petition raises an important legal issue of first impression—whether a pet store may be liable to a dog-bite victim who purchased the dog from an independent organization temporarily operating on the pet store's premises. Establishing a clear answer to this matter will serve judicial economy. We therefore elect to consider the writ petition.

*Standard of review*

We review a district court's denial of summary judgment de novo, without deference to the findings of the lower court. *State, Dep't of Transp. v. Eighth Judicial Dist. Court*, 133 Nev. 549, 553, 402 P.3d 677, 681-82 (2017). Summary judgment is appropriate when there is no genuine issue as to any material fact and "the moving party is entitled to a judgment as a matter of law." *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). "[W]hen reviewing a motion for summary judgment, the evidence, and any reasonable inferences drawn from it, must be viewed in a light most favorable to the nonmoving party." *Id.*

Whether a defendant owes the plaintiff a duty of care is a question of law. *Scialabba v. Brandise Constr. Co.*, 112 Nev. 965, 968, 921 P.2d 928, 930 (1996); *Perez v. Las Vegas Med. Ctr.*, 107 Nev. 1, 4, 805 P.2d 589, 590-91 (1991). And although the existence of an agency relationship is a question of fact, whether there is sufficient evidence of such a relationship so as to preclude summary judgment is a question of law. *See Schlotfeldt v. Charter Hosp. of Las Vegas*, 112 Nev. 42, 47, 910 P.2d 271, 274 (1996).

*Whether PetSmart owed a duty of care*

PetSmart contends that it cannot be held liable on a theory of negligence because it did not owe any duty of care, emphasizing that it did

not own or control Chip and was not involved in the adoption process. PetSmart distinguishes *Wright*, arguing the landlord there owed a duty of care only after affirmatively promising to remedy the dangerous condition, whereas here there is no evidence that PetSmart knew of Chip's aggressive tendencies. The Todds counter that *Wright* imposes a duty of care here because PetSmart controlled and supervised AH4S during the adoption process, was in the position to protect the public from dangerous dogs, and took affirmative action to protect the public by regulating aspects of the adoption process.[2]

"An indispensable predicate to tort liability founded upon negligence is the existence of a duty of care owed by the alleged wrongdoer to the person injured." *Mangeris v. Gordon*, 94 Nev. 400, 402, 580 P.2d 481, 483 (1978). The common law generally does not impose a duty of care to control the dangerous conduct of another or to warn others of the dangerous conduct. *Id.*; *see also Sparks v. Alpha Tau Omega Fraternity, Inc.*, 127 Nev. 287, 296, 255 P.3d 238, 244 (2011) ("Generally, no duty is owed to control the dangerous conduct of another." (internal quotations omitted)).

However, in *Wright* we recognized a narrow exception to the general rule when a defendant assumes a duty of care owed by another to protect a third party. *See* 105 Nev. at 615-16, 781 P.2d at 1144-45. In particular, we held that a landlord could be found liable under general tort principles where the landlord assumed a duty to protect others against a tenant's dangerous dog. 105 Nev. at 612-15, 781 P.2d at 1142-44. The dog

---

[2]To the extent the Todds argue that a genuine issue of material fact exists concerning the reasonableness of PetSmart's vetting processes, we need not reach the issue because, as set forth herein, the facts do not establish a duty of care.

there, a pitbull, killed a neighbor's dog and tried to attack the neighbors. *Id.* at 614-15, 781 P.2d at 1143-44. Following these attacks, the landlord promised he would order his tenants to get rid of the pitbull or move. *Id.* at 615, 781 P.2d at 1144. Instead, the landlord required the tenants to keep the dog inside or on a chain. *Id.* The tenants failed to confine the pitbull, which escaped and attacked another dog and, later, a child. *Id.* at 618-19, 781 P.2d at 1146-47. We concluded that the landlord initially had no duty to protect others from the dog, but once he learned of the danger posed by the dog, used "his power of eviction to force compliance," and voluntarily took action to secure the neighborhood from harm, he was no longer "non-negligent as a matter of law." *Id.* at 618, 781 P.2d at 1146.

The present case is dissimilar from *Wright*. Nothing in the record suggests that PetSmart knew about Chip's aggressive tendencies, much less undertook affirmative steps to prevent the type of harm that ensued. PetSmart did not vet the individual dogs, watch for dogs that are repeatedly placed for adoption, or investigate the animals prior to adoption.[3] Far from undertaking to share AH4S's duty, PetSmart expressly affirmed in its agreement with AH4S that the agency partner alone had control of which pets to present for adoption and was fully responsible for those animals. Indeed, the record shows that PetSmart only provides the premises for the adoption event and is not in charge of the animals placed

---

[3]Although the district court found that PetSmart kept an "adoptable pet log," the record reflects instead that the charitable organization kept that log, which a PetSmart employee could review. Even assuming, *arguendo*, that PetSmart kept a log, it does not follow that PetSmart was on notice of Chip's aggressive tendencies, especially given that each year hundreds of thousands of rescue animals are put up for adoption at PetSmart stores by charitable organizations and PetSmart does not check to see if any of those animals are later put back up for adoption.

SUPREME COURT
OF
NEVADA

(O) 1947A

9

for adoption by any agency partners. And although PetSmart took steps to ensure the safety of its store patrons by requiring AH4S to follow guidelines during its adoption fairs, those ordinary safety precautions do not suggest that PetSmart assumed the role of an insurer of adopters' safety after they left the store.

We note, too, that other jurisdictions generally do not hold a store owner liable for a dog-bite injury where the store owner was unaware that the dog may be dangerous. In *Claps v. Animal Haven, Inc.*, for example, the plaintiff sustained injuries when she was attacked by a dog being shown for adoption by an animal adoption organization on the sidewalk in front of a Petco store. 34 A.D.3d 715, 715-16 (N.Y. App. Div. 2006). The dog had been shown around 30 times before the incident and had acted very friendly. *Id.* at 716. Because the plaintiff failed to show that the defendants knew about the dog's dangerous propensities, the court concluded the plaintiff failed to raise a triable issue of fact and therefore could not recover on an action sounding in common-law negligence against the store. *Id.*

Similarly, in *Christian v. Petco Animal Supplies Stores, Inc.*, a dog that was at a pet store with its owner bit the plaintiff, who then filed a personal liability action against the owners of the dog and the store. 863 N.Y.S.2d 756, 756-57 (N.Y. App. Div. 2008). But because the evidence showed the defendants were unaware of the dog's dangerous propensities, they were entitled to judgment as a matter of law. *Id.* at 757. In *Mosholder v. Lowe's Home Centers, LLC*, an Ohio federal court similarly concluded a home improvement store was not liable when one customer's dog bit another customer where no evidence showed the store knew the dog posed a danger. 444 F. Supp. 3d 825, 829-30 (N.D. Ohio 2020). And in *Braese v. Stinker Stores, Inc.*, the Idaho Supreme Court concluded a convenience store did not

SUPREME COURT
OF
NEVADA

(O) 1947A

10

owe a duty of care where no evidence showed the store manager or employee knew or should have known the dog may be dangerous. 337 P.3d 602, 604-05 (Idaho 2014). The above cases show that even where a dog bite occurs on the store's premises, the store generally owes no duty of care where it is unaware of the dog's dangerous propensities. It follows that where the dog bite occurs off the store's premises at an attenuated time and location, and the evidence does not show the store was aware of the dog's dangerous propensities, there is no basis to impose a duty of care. Therefore, under the facts in the record, we conclude that PetSmart did not owe a duty of care to the Todds.[4]

*AH4S was not PetSmart's agent*

The district court additionally found that there was a genuine issue of material fact regarding whether PetSmart could be held liable under an agency theory. PetSmart argues that a claim of agency fails because Raphaela signed a form specifically acknowledging PetSmart was

---

[4]We are not persuaded by the Todds' additional argument that PetSmart owed a duty of care pursuant to a special relationship, as Chip's attack is attenuated from any relationship PetSmart had with the Todds. *Cf. Lee v. GNLV Corp.*, 117 Nev. 291, 296, 22 P.3d 209, 212 (2001) (deciding that a restaurant owed a duty to come to the aid of its patrons); *Scialabba v. Brandise Constr. Co.*, 112 Nev. 965, 969, 921 P.2d 928, 931 (1996) (concluding that a construction company owed a duty of care to a tenant who was assaulted by someone hiding in an unlocked apartment, where the company was in charge of locking up the apartment); *Sims v. Gen. Tel. & Elecs.*, 107 Nev. 516, 519-22, 815 P.2d 151, 153-55 (1991) (concluding an employer owned a duty of care to employees to make safe a hazardous machine in the workplace), *overruled on other grounds by Tucker v. Action Equip. & Scaffold Co.*, 113 Nev. 1349, 951 P.2d 1027 (1997). *See also Wiley v. Redd*, 110 Nev. 1310, 1312-16, 885 P.2d 592, 593-96 (1994) (explaining a "germ of a relationship" was insufficient to impose a duty of care upon an alarm company to warn police officers of dangerous dogs on a homeowner's property).

not in any way involved in the adoption and that AH4S was not affiliated with PetSmart. The Todds contend that PetSmart's conduct made Raphaela view AH4S as its apparent agent.

An essential element of an agency relationship "is a fiduciary obligation on the part of the alleged agents to act primarily for the benefit of [the principal] in matters connected with [their] undertaking." *Hunter Mining Labs., Inc. v. Mgmt. Assistance, Inc.*, 104 Nev. 568, 571, 763 P.2d 350, 352 (1988) (quotation marks omitted). A party claiming an agency relationship based on apparent authority "must prove (1) that he subjectively believed that the agent had authority to act for the principal and (2) that his subjective belief in the agent's authority was objectively reasonable." *Great Am. Ins. Co. v. Gen. Builders, Inc.*, 113 Nev. 346, 352, 934 P.2d 257, 261 (1997). Reliance will not be reasonable if the party claiming apparent agency "closed [her] eyes to warnings or inconsistent circumstances." *Id.* (internal quotation marks omitted).

Here, the agreement between PetSmart and AH4S expressly disclaimed any agency relationship between them. And the facts do not support apparent agency, as Raphaela signed an adoption release form that plainly stated AH4S is not affiliated with PetSmart or PetSmart Charities in any way. Notably, Raphaela admitted that, based on the language of the adoption release form, she understood, prior to adopting Chip, that AH4S was not affiliated with PetSmart or PetSmart Charities. Accordingly, we conclude that there is no genuine issue of fact for the jury as to whether an agency relationship existed between PetSmart and AH4S.

## CONCLUSION

The district court erroneously denied summary judgment, as PetSmart did not owe a duty of care to the Todds as a matter of law. In addition, there is no genuine issue of fact regarding any alleged agency relationship between PetSmart and AH4S. Therefore, we grant the petition and direct the clerk of this court to issue a writ of mandamus directing the district court to grant PetSmart's motion for summary judgment.

_____, J.
Silver

We concur:

_____, J.
Parraguirre

_____, J.
Stiglich