ROBERT NORMAN SIMS AND NANCY KATHERINE SIMS, Appellants, *v.* GENERAL TELEPHONE & ELECTRONICS, DBA GTE GOVERNMENT SYSTEMS CORP., ALSO DBA GTE POWER SYSTEMS, ALSO GTE, Respondent.

No. 20727

July 12, 1991 815 P.2d 151

*Monte J. Morris,* Henderson, for Appellant.

*Lionel Sawyer & Collins,* and *David N. Frederick,* Las Vegas, for Respondent.

518

## OPINION

*Per Curiam:*

This is an unfortunate case. On January 22, 1987, Robert Sims (Robert), a janitor at respondent General Telephone and Electronics' (GTE) manufacturing plant, was found curled up in the bottom of a degreasing machine. At the time Sims was discovered, Robert Tate (Tate), the plant security guard, attempted to remove Sims from the degreaser, but was unsuccessful due to the heavy amount of toxic chemicals that was in the machine. Several minutes later, police arrived, and were finally able to remove Robert from the degreaser. Robert was then given emergency medical treatment and rushed to St. Rose de Lima Hospital, where he died four days later without regaining consciousness.

Robert's parents, appellants Robert Sr. and Nancy Sims, then brought this wrongful death action against GTE. In this lawsuit, appellants claim that GTE was negligent in three ways. First, appellants claim that GTE failed to provide Robert with proper warnings of the degreaser's dangers. Second, the Sims contend

that GTE failed to take proper precautions against the hazards of the degreaser. Finally, appellants argue that Tate, GTE's employee, was negligent in his effort to rescue Robert.

After discovery, GTE moved for summary judgment on all issues. GTE maintained that appellants' claims were barred by the exclusive remedy provisions of the workers' compensation laws. Respondent further argued that even if GTE and Tate had behaved negligently in the manner described, appellants had produced no evidence that this negligence proximately caused Robert's death.

In October 1989, the court below first ruled on the summary judgment motion. Specifically, the district court held that genuine issues of fact existed regarding whether or not GTE was Robert's employer at the time of his death. Thus, summary judgment was denied on this issue.

Next, the court held that appellants had presented no evidence that would tend to show that any action by GTE proximately caused Robert's death. Finally, the district court held that, although appellants had failed to present any evidence that would show that Tate's rescue efforts had proximately caused Robert's death, it would allow appellants an extra month of discovery. The district court then ordered appellants to produce evidence during this period that would show that, if Tate had administered oxygen in the period before police arrived, it "would have made a difference." When appellants returned in November without any evidence in support of this causal link, summary judgment was granted.

The claims in this appeal are essentially the same as those in the court below. Namely, appellants contend that a factual dispute exists as to whether GTE or Tate's actions proximately caused Robert's death. Respondent disagrees with this contention, and also argues that, contrary to the finding of the court below, no dispute exists as to whether GTE was Robert's employer. We hold that factual disputes exist regarding GTE's negligence, Tate's negligence, and GTE's status as Robert's employer. Accordingly, we reverse the grant of summary judgment and remand for further proceedings.

## I.

This case comes before us on appeal from a grant of summary judgment. The standard of review in such cases has been described many times by this court. In Butler v. Bogdanovich, 101 Nev. 449, 451, 705 P.2d 662, 663 (1985), we stated that "[a]n entry of summary judgment is proper only when there are no issues of fact and the moving party is entitled to an expedited judgment as a matter of law." The party opposing the motion must set forth specific facts that show that there is a genuine issue

for trial. Van Cleave v. Kietz-Mill Minit Mart, 97 Nev. 414, 415, 633 P.2d 1220, 1221 (1981).

On appeal, the summary judgment standard thus requires us to determine whether a factual dispute exists with regard to each element of the cause of action. Consequently, in order to survive a summary judgment motion in a negligence claim, there must be factual disputes as to: (1) duty; (2) breach; (3) actual causation; (4) legal causation; and (5) damages. Perez v. Las Vegas Medical Center, 107 Nev. 1, 805 P.2d 589 (1991); Beauchene v. Synanon Foundation, Inc., 88 Cal.App.3d 342, 346 (1979).

We have, in the past, indicated our hesitance to affirm the granting of summary judgment in negligence cases, because such claims generally present jury issues. *Van Cleave,* 97 Nev. at 417, 633 P.2d at 1222. If respondent can show that one of the elements is clearly lacking as a matter of law, however, then summary judgment is proper. *Id.*

With these principles in mind, we now turn to an examination of whether a factual dispute existed with respect to each element of each of appellants' negligence claims.

## II.

Appellants' first contention is that GTE's negligence prior to the accident proximately caused Robert's death. Specifically, appellants claim that GTE was negligent in the following ways: (1) it failed to warn Robert of the dangers presented by the degreaser; and (2) it failed to secure the degreaser area adequately. We will now examine these claims more closely in order to determine if a factual dispute exists.

### Duty

In Mangeris v. Gordon, 94 Nev. 400, 402, 580 P.2d 481, 483 (1978), we stated that in order for a negligence action to succeed, the alleged wrongdoer must owe a duty of care to the person injured. We further held that in failure to warn cases, defendant's duty to warn exists only where there is a special relationship between the parties, and the danger is foreseeable. *Id.* at 403, 580 P.2d at 483.

We also discussed the duty question in Southern Pacific Co. v. Huyck, 61 Nev. 365, 128 P.2d 849 (1942). In *Huyck,* this court held, in the context of a suit under the Federal Employees Liability Act, that an employer has a duty to exercise due care in maintaining a safe workplace. *Id.* at 379, 128 P.2d at 855.

These cases clearly reveal that GTE had a duty both to warn Robert of the dangers of the degreaser machine, and to ensure

that the machine did not present unreasonable dangers to those in the workplace. Under *Mangeris,* where a special relationship exists, there is a duty to warn plaintiff of foreseeable dangers. Here, Robert worked in GTE's plant, and the dangers that the degreaser presented to people like Robert should have been apparent to GTE. Thus, GTE had a duty to warn Robert of the machine's dangers. Further, under *Huyck,* GTE had a duty to use reasonable care to make its workplace, including the degreaser area, safe. Thus, we now examine whether a factual dispute exists as to GTE's compliance with these duties.

### Breach

The above cases show that GTE's duty was one of due care, both in ensuring that Robert was adequately warned, and in making its workplace safe. As stated in Merluzzi v. Larson, 96 Nev. 409, 412, 610 P.2d 739, 742 (1980), this requirement of due care "is invariably the same—one must conform to the legal standard of reasonable conduct in light of the apparent risk."

Thus, in order to *breach* this standard of care, a person must fail to exercise "that degree of care in a given situation which a reasonable man under similar circumstances would exercise." Driscoll v. Erreguible, 87 Nev. 97, 101, 482 P.2d 291, 294 (1971). Also, this court has noted that because reasonable people may often differ as to whether an amount of care was appropriate under the circumstances, the issue should generally be submitted to the trier of fact. *Merluzzi,* 96 Nev. at 413, 610 P.2d at 742. Consequently, in order to determine whether a factual dispute exists regarding breach, we must look at all the circumstances surrounding both the warnings given by GTE and the precautions taken with respect to the degreaser.

On the warning issue, several pieces of evidence were presented. First, there were three warning signs on the degreaser tank itself. One sign had the word "DANGER" printed on it in large lettering, and then stated, in detail, various hazards and precautions to be followed by users of the machine. Another sign on the machine was entitled, "OPERATING AND CAUTION INSTRUCTIONS." This sign contained several instructions on how to operate the machine safely. Finally, the third warning sign stated in large black lettering that the degreaser contained dangerous chemicals. This sign also described various precautions, first aid procedures, and handling and storage tips that should be followed when around the machine. On each of the three signs appears the ominous phrase: "DEATH CAN RESULT FROM CARELESSNESS."

In addition to the warning signs on the machine itself, several

uncontradicted affidavits reveal that Robert was verbally warned about the dangers of the degreaser. Robert's supervisor, the plant security guard, and one of Robert's co-workers all stated that Robert had been clearly warned never to enter the degreaser room, because of the great dangers of the machine.

Ordinarily we would agree that these verbal and written warnings were sufficient as a matter of law. However, appellants insist that the warnings lost their significance to Robert when the plant ceased operations and the degreaser room was no longer used. Appellants contend that Robert was not informed that the toxicity of the chemicals in the degreaser tank would not dissipate within a short time after its use was discontinued. Moreover, the young man, without contrary warnings, may have assumed that when degreaser room operations were shut down, the tank would have been cleaned and any dangerous chemical residues removed. Appellants conclude, therefore, that Robert should have been informed that the degreaser room would be left in a dangerous state despite the discontinuance of operations, and again told not to enter the room or approach the degreaser tank. We agree that this issue may not properly be resolved in a summary proceeding. Whether GTE's prior warnings and admonitions reasonably placed Robert on notice that the degreaser room and tank would retain its dangerous characteristics after operations were discontinued is an issue of fact to be determined by the jury. For this reason, summary judgment was improperly granted on the failure to warn issue.

Appellants also contend that GTE failed in its duty to maintain a reasonably safe workplace. Specifically, appellants contend that, under the circumstances, reasonable care required GTE to take at least one of the following actions: (1) purge the tank; (2) barricade the entrance to the degreaser room (there was no door); (3) close the cover of the tank; or (4) maintain an experienced operator on duty until the tank became harmless.

We agree with appellants that a factual dispute exists on this issue. It is quite clear that the degreaser tank was a very dangerous machine; the warnings on the tank itself reveal this, as does the fact that GTE gave specific warnings to its employees about the hazards of the tank. Furthermore, since the plant was shutting down, all of these options (with the possible exception of installing a watchman) were quite feasible. For this reason, a question of fact exists as to whether GTE's decision to rely on warnings, rather than these other precautions, was reasonable in light of the great risks posed by the tank. This is especially so given our frequent statements that questions of reasonableness are, in general, for the jury to decide.

524

*Actual Causation*

Our conclusion that factual issues exist regarding the reasonableness of defendant's behavior does not, of course, end the inquiry. For unreasonable behavior is not actionable unless it *actually causes* plaintiff's injuries. *See Van Cleave,* 97 Nev. at 416, 633 P.2d at 1221. Put another way, in order to satisfy this element, plaintiff must show that *but for* defendant's negligence, his or her injuries would not have occurred. Taylor v. Silva, 96 Nev. 738, 741, 615 P.2d 970, 971 (1980).

An application of this "but for" test to the instant case reveals that, under either appellants' "failure to adequately warn [sic]" or "failure to secure" theories, a factual dispute exists on the actual causation issue. It is clear that "but for" GTE's failure to secure the degreaser area in one of the ways described above, Robert *could not,* and thus would not, have gotten into the tank. For this reason, assuming that GTE was negligent in failing to secure the area, this negligence *actually caused* Robert's death, and summary judgment should not have been granted on this issue. Moreover, if the trier of fact determines that GTE's warnings and admonitions did not reasonably forewarn Robert of the lingering hazards that would exist in the degreaser tank despite a permanent discontinuance of operations, the trier may also find that, "but for" GTE's breach of this duty, Robert would not have entered the tank. In that regard, trial evidence may indicate that historically Robert had strictly heeded directions concerning his duties and safety responsibility. If so, the trier may conclude that in the face of proper warnings, Robert would have maintained his consistent attitude of compliance with instructions. Therefore, on the failure to warn issue, because the trier of fact may find a negligent breach of duty, it may also find that, as a proximate result thereof, Robert entered the tank. Summary judgment was therefore improper on this issue as well.[1]

*Legal Causation*

Even where it has been established that defendant's conduct has been one of the causes of plaintiff's injury, there remains the question of whether defendant will be legally responsible for the injury. This is basically a "policy issue," with the court deciding whether such considerations point in favor of making defendant responsible for the consequences that have, in fact, occurred.

---

[1]We, of course, are only hypothesizing, and have no impression, or suggest none, concerning what the evidence will reflect at trial.

The main consideration in such situations is foreseeability. As stated in Taylor v. Silva, 96 Nev. at 741, 615 P.2d at 970, "[a] negligent defendant is responsible for all *foreseeable* consequences . . . [of] his or her negligent act." (Emphasis added.) This requirement means that defendant must be able to foresee that his negligent actions may result in harm of a particular variety to a certain type of plaintiff. *See* Karlsen v. Jack, 80 Nev. 201, 206, 391 P.2d 319, 321 (1964).

This requirement does not mean, however, that defendant must foresee the extent of the harm, or the manner in which it occurred. *Id.* Under *Karlsen*, defendant need only foresee that his or her negligent conduct could have caused a particular variety of harm to a certain type of plaintiff. Here, GTE could certainly foresee that any negligence with regard to the degreaser might result in toxic poisoning of the workers in the plant. The fact that GTE may not have been able to see the manner in which the harm occurred, *i.e.*, it would have been difficult to foresee that Robert would wind up in the bottom of the tank, is immaterial. Thus legal causation is present under the theories raised by appellants.

### Damages

Legally recoverable damages are clearly present in this case.

### III.

Appellants' next claim is that Tate's negligent rescue efforts caused Robert's death, and that GTE is liable for these actions under a theory of respondeat superior. In order to determine whether summary judgment was properly granted, we will again examine each element of appellants' theory.

### Duty

At common law, there was no affirmative duty on the part of strangers to render aid to those in need of emergency assistance. *See Prosser and Keeton on Torts* § 56, at 375 (5th ed. 1984). Once someone undertook the responsibility of giving such aid, however, the common law imposed on the rescuer the duty of reasonable care. *Id.* at 378. Some observers argued that such a rule made little sense, however, because holding rescuers accountable for their ordinary negligence if they undertook a rescue, but not if they chose to ignore the situation, caused many people to choose the latter option. *Id.* Hence, a number of states passed "good samaritan" laws, which encourage the giving of emergency aid by making rescuers immune from liability for acts of ordinary negligence. *Id.*

In Nevada, the "good samaritan" statute makes those who render emergency aid, gratuitously and in good faith, not liable for acts of ordinary negligence.[2] This court has never had occasion to define the meaning of the phrase "gratuitously and in good faith," as used in the Nevada statute. We now hold that this phrase limits the benefits of "good samaritan" protection to those situations in which the rescuer was not already under a duty to act. Such a construction is in line with the obvious purpose of the statute—ensuring that those people who could ignore the situation choose instead to undertake the rescue. Further, this construction is quite consistent with the common meaning of the word "gratuitously," which is defined in one dictionary as "unnecessary or unwarranted." American Heritage Dictionary (New College Edition 1980). Thus, "good samaritan" liability applies only where rescue would otherwise be legally unnecessary or unwarranted.

Accordingly, NRS 41.500 is not applicable in this case. For the law does sometimes require parties to act affirmatively to aid others in peril. Such a duty is generally imposed where a special relationship exists between the parties, such as innkeeper-guest, teacher-pupil, or, as here, an employer-employee.[3] *Prosser and Keeton on Torts* § 56, at 376. In these situations, the party in "control of the premises" is required to take reasonable affirmative steps to aid the party in peril. *Id.* Because GTE, and hence, its employees, were therefore already under a duty to take reasonable steps in rescuing Robert (even before any efforts were made

---

[2]The Nevada "good samaritan statute" is codified as NRS 41.500. This law reads, in pertinent part, that "any person in this state [with certain exceptions not relevant to this appeal], who renders emergency care or assistance in an emergency, gratuitously and in good faith, is not liable for any civil damages as a result of any act or omission, not amounting to gross negligence, . . . ."

[3]GTE argues that even if the "good samaritan" law is not applicable, it (GTE) should still not be held liable for Tate's actions because the security guard was acting outside of the scope of employment. This argument ignores the crucial point, however, that issues pertaining to the scope of employment almost always present questions of fact. Birkner v. Salt Lake County, 771 P.2d 1053, 1057 (Utah 1989). The *Birkner* court went on to state that the issue must be submitted to the jury "whenever reasonable minds could differ as to whether the [employee] was involved wholly or partly in performance of the master's business . . . ."

Here, GTE was under a duty to rescue one of the workers who was in peril in its plant. Tate was the only person in the building that was clearly employed by GTE. Thus, the only way that GTE could perform its duty was through Tate. For this reason, it is at least arguable that Tate was involved "wholly or partly" in the performance of GTE's business when he (Tate) made the rescue attempt. Consequently, the district court correctly refused to grant summary judgment on this issue.

to save him), the "good samaritan" law does not apply.[4] Consequently, GTE remained under a duty of reasonable care in performing the rescue.

## Breach

As discussed above, the question of whether reasonable care was exercised is generally one that should be decided by the jury—for it almost always involves factual inquiries. Here, appellants presented evidence that Tate could have, but did not, provide Robert with oxygen several minutes before the rescue crew arrived. A jury could have found that such behavior was unreasonable under the circumstances, and therefore the trial court properly held that a factual dispute exists regarding breach.

## Actual Causation

The district court's ruling granting summary judgment in favor of GTE was based on the fact that appellants failed to produce evidence that would support a finding of actual causation. Specifically, appellants did not produce medical testimony to the effect that had Robert been given oxygen ten minutes earlier, "it would have made a difference." The court therefore held that judgment against appellants on the issue of actual causation was appropriate as a matter of law.

This is a very close question. Nevertheless, as we have often stated in the past, even a slight factual dispute is sufficient to make the granting of summary judgment improper. *See, e.g.,* Oak Grove Investors v. Bell & Gosset Co., 99 Nev. 616, 623, 668 P.2d 1075, 1079 (1983). Here, Robert was still breathing (though unconscious) at the time when Tate's efforts began, but had stopped breathing when the paramedics arrived. This evidence supports an inference that the application of oxygen could have made a difference. Accordingly, we hold that a factual dispute existed on the actual causation issue.

## Legal Causation

Legal causation is present under this theory because it is

---

[4]Although we have described this duty to rescue as arising out of the employer-employee relationship, we must note that the owner/operator of a business has an affirmative duty to attempt to rescue all workers injured on the business premises, regardless of whether these workers are his "employees" in the technical sense. Thus, the duty to rescue existed here, even though Robert may not have been an employee of GTE (*see infra*), but simply an employee of the company GTE hired (Top-Hat Maintenance) to clean the plant.

undoubtedly *foreseeable* that, if a rescue operation is performed without proper care, the victim's condition will be made worse.

*Damages*

Legally recoverable damages are clearly present in this case.

## IV.

Respondent's final contention is that even if material issues of fact are present under appellants' negligence theories, summary judgment was nonetheless properly granted because appellants' claims are barred by the exclusive remedy provisions of the Nevada Industrial Insurance Act (NIIA). Specifically, GTE contends that because Robert was a GTE employee, and because Robert was injured on the job, the NIIA provides Robert (and his parents) with the only available recovery for his injuries.[5]

Under NRS 616.370, the NIIA provides the exclusive remedy for workers injured on the job due to the actions of their employer. NRS 616.560 states that persons injured on the job other than by the actions of their employer (or a person employed by their employer) may bring an action at law for tort damages. Thus, the question that must be decided here is whether a factual dispute exists as to whether GTE was Robert's employer—if so, then the district court properly refused to grant summary judgment on this issue; if GTE was Robert's employer as a matter of law, however, then the lower court's grant of summary judgment may be affirmed on this ground.

This court has often held that the key to deciding such issues is whether the alleged employer exercised "control" over plaintiff. *See, e.g.,* Whitley v. Jake's Crane and Rigging Inc., 95 Nev. 819, 821, 603 P.2d 689, 690 (1979). Whether such "control" existed, in turn, is determined by the totality of the circumstances, including: (1) the degree of supervision; (2) the existence of a right to hire and fire; (3) the right to control the worker's hours and location of employment; (4) the source of wages; (5) the extent to which the worker's activities further the alleged employer's general business concerns. *Id.* In addition, this court has noted that "in the absence of a clearly established NIIA defense, summary judgment must be denied." Leslie v. J.

---

[5]It is clear from the record that appellants received NIIA benefits as a result of this incident.

A. Tiberti Construction, 99 Nev. 494, 498, 664 P.2d 963, 965 (1983).[6]

An application of these factors to the instant case reveals that the trial court properly concluded that a factual dispute exists as to whether GTE was Robert's employer. Top-Hat Maintenance hired, trained, and supervised Robert. Also, Robert was universally perceived as being employed by Top-Hat, not GTE. Top-Hat controlled the number of hours Robert worked. In addition, Top-Hat exercised the main responsibility for the decision whether to fire employees such as Robert. Finally, Top-Hat, and not GTE, was responsible for obtaining workman's compensation insurance for Robert. These pieces of evidence all point to the conclusion that whether or not Robert was employed by GTE was in dispute. Thus, the district court properly refused to grant summary judgment on this issue.

## V.

Appellants allege that GTE was negligent in three ways: (1) failure to warn defendant adequately of the dangers of the degreaser; (2) failure to secure properly the degreaser; and (3) vicariously, through the actions of its employee, Robert Tate. With regard to the failure to warn claim, we have concluded that material factual issues exist concerning the adequacy of GTE's warnings and admonitions in the context of the period subsequent to the discontinuance of operations in the degreaser room. Causation issues also remain, as previously noted. Summary judgment on this issue was therefore improper.

On the failure to secure claim, however, summary judgment was also improper. It is clear that GTE had a duty to maintain a safe work place, and it is undisputed that respondent took none of

---

[6]Respondent places great reliance on several of our cases that seem to indicate that very little evidence is required to show that a defendant is an "employer" of plaintiff. Close inspection reveals that this reliance is misplaced, however, because all of the cases relied on by respondent involve an injured *construction* employee of a sub-contractor, who is attempting to sue the general contractor. *See, e.g.,* Hosvepian v. Hilton Hotels, 94 Nev. 768, 770, 587 P.2d 1313, 1315 (1978).

This distinction is significant, because such cases are controlled by NRS 616.085(1), which provides that "subcontractors and their employees shall be deemed employees of the principal contractor." In non-construction situations such as this case, however, this court has taken a much more fact-specific approach to the problem. *See, e.g.,* Meers v. Haughton Elevator, 101 Nev. 283, 285 n.3, 701 P.2d 1006, 1007 n.3 (1985) (expressly noting that inquiry is different in non-construction situations); Daniels v. Las Vegas Transfer and Storage, 97 Nev. 231, 233, 627 P.2d 400, 401 (1981).

the precautions suggested by appellants. Whether this inaction was reasonable under the circumstances is a question for the jury. Also, because the incident clearly would not have happened had the precautions been taken, and because the general type of injury was foreseeable, a dispute exists as to causation. Thus, factual disputes exist regarding all elements of this cause of action.

In addition, the trial court erred in granting summary judgment on the negligent rescue claim. GTE (and Tate) clearly had an affirmative duty to rescue Robert, and a duty to use reasonable care in this rescue attempt. In addition, factual disputes exist on the issue of actual and proximate causation, as well as damages.

Finally, appellants' claims are not barred by the NIIA. While the NIIA provides the exclusive remedy for injured employees against their employers, these injured employees may recover in tort against third parties. Because a factual dispute exists as to whether GTE was Robert's employer, summary judgment was properly denied on this issue.

Accordingly, the grant of summary judgment is reversed, and this matter is remanded to the district court for further proceedings consistent with the views expressed herein.