AHILIYA LEE, Widow of BOBBY LEE STURMS, aka BOBBY LEE, Deceased; AHILIYA LEE, as Guardian ad Litem for AARON CODY LEE, a Minor, Appellant, *v.* GNLV CORP., dba GOLDEN NUGGET HOTEL AND CASINO, Respondent.

No. 33172

May 7, 2001

22 P.3d 209

*Law Offices of Gus W. Flangas,* Las Vegas, for Appellant.

*Paula C. Gentile,* Las Vegas, for Respondent.

Before SHEARING, AGOSTI and LEAVITT, JJ.

## OPINION

By the Court, AGOSTI, J.:

This is an appeal from the district court's order granting summary judgment in favor of respondent GNLV Corporation. GNLV was the defendant below in a suit claiming negligence and alleging wrongful death. Appellant Ahiliya Lee's husband, Bobby Lee Sturms, choked to death when his upper airway became occluded

by food he had been eating in GNLV's restaurant. On appeal, Lee argues that GNLV breached its duty of reasonable care owed to Sturms when its employees failed to administer the Heimlich maneuver to him. Since the question of a defendant's breach of duty in a negligence action is generally considered a question of fact for the jury, Lee claims summary judgment should not have been granted.

We conclude that GNLV did owe a duty to Sturms to act reasonably, and that, under the circumstances presented in this case, GNLV's employees acted reasonably as a matter of law by rendering assistance to Sturms and summoning professional medical aid once they became aware that Sturms was in need of such assistance. Under the facts of this case, GNLV did not, as a matter of law, breach the duty it owed to Sturms. Accordingly, we affirm the district court's order granting summary judgment in GNLV's favor.

## FACTS

The parties do not dispute the relevant facts. On March 27, 1995, the decedent, Bobby Lee Sturms, and a companion were having dinner at the Carson Street Café, a restaurant located within the Golden Nugget Hotel and Casino in Las Vegas. The respondent, GNLV, is the owner and operator of the Golden Nugget Hotel and Casino and the Carson Street Café. It is undisputed that Sturms had been drinking that night and was intoxicated. Later, his blood alcohol content was measured and determined to be 0.32 percent.

Sturms' companion observed that Sturms, after only a few bites of his meal, appeared nauseated and seemed to be "getting sick." Shortly thereafter, Sturms vomited in his lap and on the floor, slumped over in his chair and closed his eyes. At this point, Sturms' companion believed that Sturms had blacked out. Sturms' companion summoned a waitress and security personnel. They arrived within sixty seconds, immediately checked Sturms' vital signs and noted that Sturms' pulse was "strong." At no time did Sturms choke or cough, or exhibit any other signs that an object was obstructing his breathing. Soon thereafter, Sturms' pulse began to slow. Immediately, security personnel radioed the hotel dispatcher and requested the assistance of the Las Vegas Fire Department paramedics. While waiting for paramedics to arrive, security personnel obtained an oxygen tank, laid Sturms on the floor and began CPR procedures. Security personnel did not attempt mouth-to-mouth resuscitation.

Upon arrival, the paramedics took over the efforts to resuscitate Sturms. Their attempts to clear Sturms' airway proved unsuccessful. Sturms was then transported to the University Medical Center. At the emergency room, doctors attempted to clear

Sturms' airway, but these efforts were also unsuccessful. At 10:10 p.m. doctors pronounced Sturms dead.

An autopsy was performed the next day. The examining doctor stated that Sturms died from ''asphyxia due to upper airway occlusion by food material.'' Sturms had choked to death when food became lodged in his airway. In the doctor's view,

> [choking to death] is not an unusual thing to have happen in a person who's severely intoxicated. Whether they suddenly inhale what they're drinking or whether they vomit inhaled stomach contents [sic] or if they're eating, they get back into the back [sic] of the throat, they get an uncoordinated swallowing effort and [the food] goes into the airway instead. This is not terribly unusual. This is one of the hazards of drinking too much.

When asked whether security personnel could have saved Sturms' life, the examining doctor testified, ''I doubt it. I doubt even an immediate Heimlich maneuver would have helped [Sturms] . . . . [W]ith the material packed as tightly as we found it I seriously doubt that a Heimlich maneuver would have been successful.''

As a result of Sturms' death, Sturms' estranged wife, Ahiliya Lee, personally and on behalf of their minor son, Aaron Lee, brought this wrongful death action, claiming negligence on the part of GNLV. Pursuant to NRCP 56, GNLV moved for summary judgment. In its motion, GNLV argued that although it owed a duty to Sturms to take reasonable steps to aid him when it became apparent that he needed medical assistance, it fulfilled this duty when its employees promptly summoned emergency medical assistance.[1] Lee opposed GNLV's motion for summary judgment, asserting that GNLV did not exercise ''reasonable care'' toward Sturms. The district court granted GNLV's motion.

In this appeal, Lee asserts that the district court erred in granting summary judgment in favor of GNLV. She maintains that GNLV's duty encompassed not merely summoning emergency medical assistance, but also ''tak[ing] reasonable affirmative steps to aid [Sturms].'' Furthermore, Lee claims that ''reasonable prudence required that [GNLV's] security guards administer the Heimlich Maneuver to the [d]ecedent.'' Additionally, Lee contends that since breach of duty in a negligence case is generally a question for the jury, summary judgment was improperly granted by the district court.

---

[1]GNLV also argued in its motion for summary judgment that Lee incurred no damages as a result of Sturms' death. Because we conclude that GNLV's employees acted reasonably under the circumstances, we need not reach the damages issue.

## DISCUSSION

When reviewing a district court's order granting summary judgment, this court will determine "whether the law has been correctly perceived and applied by the district court." *Mullis v. Nevada National Bank,* 98 Nev. 510, 512, 654 P.2d 533, 535 (1982). Additionally, summary judgment should only be granted by a district court when, after reviewing the pleadings and discovery on file, and viewing them in a light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See Butler v. Bogdanovich,* 101 Nev. 449, 451, 705 P.2d 662, 663 (1985); NRCP 56(c). "A genuine issue of material fact is one where the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Posadas v. City of Reno,* 109 Nev. 448, 452, 851 P.2d 438, 441-42 (1993). Accordingly, we review the district court's decision de novo. *See Bulbman, Inc. v. Nevada Bell,* 108 Nev. 105, 110, 825 P.2d 588, 591 (1992).

Furthermore, in a negligence action, the question of whether a "duty" to act exists is a question of law solely to be determined by the court. *Scialabba v. Brandise Const. Co., Inc.,* 112 Nev. 965, 968, 921 P.2d 928, 930 (1996); *see also* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 37, at 236 (5th ed. 1984). Therefore, under our de novo standard of review, we must first determine whether "such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other." Keeton et al., § 37, at 236.

In Nevada, as under the common law, strangers are generally under no duty to aid those in peril. *See Sims v. General Telephone & Electric,* 107 Nev. 516, 525, 815 P.2d 151, 157 (1991). This court, however, has stated that, where a special relationship exists between the parties, such as with an innkeeper-guest, teacher-student or employer-employee, an affirmative duty to aid others in peril is imposed by law. *See id.* at 526, 815 P.2d at 157-58 (citing Keeton et al., § 56, at 376). Likewise, we have held that a party who is in " 'control of the premises' is required to take reasonable affirmative steps to aid the party in peril." *Id.* at 526, 815 P.2d at 158 (quoting Keeton et al., § 56, at 376). Finally, while this court has not so held, other jurisdictions have expressly stated that restaurant owners and their employees owe an affirmative duty to come to the aid of patrons who become ill or are otherwise in need of medical attention. *See Breaux v. Gino's, Inc.,* 200 Cal. Rptr. 260, 261 (Ct. App. 1984) ("It is well established that

restaurants have a legal duty to come to the assistance of their customers who become ill or need medical attention . . . ."); *Drew v. LeJay's Sportsmen's Cafe, Inc.,* 806 P.2d 301, 306 (Wyo. 1991) ("A restaurant whose employees are reasonably on notice that a customer is in distress and in need of emergency medical attention has a legal duty to come to the assistance of that customer.").

Because a special relationship exists between a restaurateur and his patrons, and because there is no dispute that GNLV was "in control of the premises," GNLV's employees were under a legal duty to come to the aid of Sturms. GNLV does not dispute that a duty was owed to Sturms. Thus, the issue in this case is not whether GNLV owed a duty to Sturms. Rather, the narrower issues presented in this case concern the nature and extent of GNLV's duty to Sturms, and whether GNLV's employees breached that duty.

The law is clear that if a legal duty exists, reasonable care under the circumstances must be exercised. *See Sims,* 107 Nev. at 526-27, 815 P.2d at 157-58; Keeton et al., § 37, at 237 and § 56, at 377-78. Whether a defendant's conduct was "reasonable" under a given set of facts is generally an issue for the jury to decide. *See Sims,* 107 Nev. at 527, 815 P.2d at 158. Thus, Lee argues that because the issue of "reasonableness" is usually an issue for the jury to decide, summary judgment was improperly granted by the district court.

While we agree with this general proposition, we note that, in some clear cases, the nature and extent of the defendant's duty is properly decided by the court.[2] Thus, we have stated that " '[c]ourts are reluctant to grant summary judgment in negligence cases because foreseeability, duty, proximate cause and reasonableness usually are questions of fact for the jury . . . . But when plaintiff as a matter of law cannot recover, defendant is entitled to a summary judgment.' " *See Van Cleave v. Kietz-Mill Minit Mart,* 97 Nev. 414, 417, 633 P.2d 1220, 1222 (1981) (quoting *Thomas v. Bokelman,* 86 Nev. 10, 13, 462 P.2d 1020, 1022 (1970)); *see also* Keeton et al., § 37, at 237 ("It is possible to say, in many cases, that the conduct of the individual clearly has or has not

---

[2]Such would be the case under the negligence per se doctrine. *See Ashwood v. Clark County,* 113 Nev. 80, 86, 930 P.2d 740, 744 (1997) (stating that "[a] violation of statute establishes the duty and breach elements" of a negligence action).

conformed to what the community requires, and that no reasonable jury could reach a contrary conclusion."). We conclude that this is such a case.

Lee contends that not only did GNLV have a duty to act "reasonably," but also that reasonableness under the circumstances of this case specifically required GNLV to administer the Heimlich maneuver to Sturms. In her brief to this court, Lee contends that "[p]roprietors of Hotel Casinos are in the best position to prevent the type of harm which befell the [d]ecedent." Lee claims that the imposition of such a duty on parties such as GNLV is not onerous or burdensome. Lee further contends that the "reasonable" standard of care mandates the use of the Heimlich maneuver because a choking victim may have only minutes before serious injury or death results, and because the Heimlich maneuver is relatively simple to perform.

This court has stated that a person who has a duty to render aid to another must "take reasonable affirmative steps to aid the party in peril." *Sims,* 107 Nev. at 526, 815 P.2d at 157-58 (citing Keeton et al., § 56, at 376). While GNLV must take "reasonable affirmative steps" to aid a patron such as Sturms who is in need of first aid, this court has never ruled on the specific question of what exactly those "reasonable affirmative steps" entail.

Although this court has not spoken on this specific issue,[3] four other jurisdictions have reported opinions on this subject. *See Breaux,* 200 Cal. Rptr. at 260; *Coccarello v. Round Table of Coral Gables, Inc.,* 421 So. 2d 194 (Fla. Dist. Ct. App. 1982); *Parra v. Tarasco, Inc.,* 595 N.E.2d 1186 (Ill. App. Ct. 1992); *Drew,* 806 P.2d at 301. Most instructive is the decision of the Wyoming Supreme Court in *Drew,* a case remarkably similar to the case before this court, in which a patron who was arguably intoxicated choked on his meal after only a few bites. 806 P.2d at 302. Customers near the choking man laid him on the floor and

---

[3]We note that while the Nevada Legislature has not addressed this specific issue, several statutes have been adopted that impose duties to render aid in particular situations. *See, e.g.,* NRS 484.223(c) (requiring motorists to stop and render "reasonable assistance" in certain circumstances); NRS 616C.085(1) (mandating that employers render "all necessary first aid" to injured employees).

Notably, the Nevada Legislature has also enacted a statute that encourages rendering first aid. Thus, in Nevada, one "who renders emergency care or assistance in an emergency, gratuitously and in good faith, is not liable for any civil damages as a result of any act or omission, not amounting to gross negligence." NRS 41.500(1). However, this statute does not apply to this case. *See Sims,* 107 Nev. at 526, 815 P.2d at 157.

proceeded to give him mouth-to-mouth resuscitation. *Id.* at 303. Eventually, medical help was summoned. *Id.* The plaintiffs in that case argued that the employees of the restaurant owed patrons who become ill a duty to render first aid. *Id.* at 301-02. Ruling against the plaintiffs, the court held that "[a restaurateur] did not owe a duty to provide medical training to its food service personnel, or medical rescue services to its customers." *Id.* at 302. The court, noting the burden that would be placed on those in the food service industry, coupled with the low probability that this situation would occur on a regular basis, held that summoning medical assistance within a reasonable time satisfies the requirement that a restaurateur exercise "reasonable care." *Id.* at 306.

Likewise, the Florida Court of Appeal held in *Coccarello:*

> A proprietor of a public place has a duty only to take reasonable action to give or secure first aid after he knows that a patron is ill or injured; he is not required to take any action beyond that which is reasonable under the circumstances. The action taken by the proprietor under the circumstances herein [summoning a medical rescue team within five minutes of discovering the patron was choking] was reasonable.

421 So. 2d at 195 (citations omitted). Similarly, the Illinois court stated in *Parra* that "[a]s a general rule, a restaurateur is not an insurer of his customers' safety against all personal injuries." *Parra,* 595 N.E.2d at 1188. Finally, commentators on this subject declare that one who is under a duty to render medical assistance "will seldom be required to do more than give such first aid as he reasonably can, and take reasonable steps to turn the sick person over to a doctor or to those who will look after him until one can be brought." Keeton et al., § 56, at 377.

Nevada imposes a duty on GNLV to take "reasonable affirmative steps" to aid patrons in need of medical attention. In this case, GNLV's employees examined and assessed Sturms' condition immediately upon being summoned by Sturms' dining companion. GNLV employees diligently continued to monitor Sturms' condition until his condition worsened. Upon realizing that Sturms' medical condition was deteriorating, GNLV's employees summoned professional medical assistance. Thus, we cannot say that the behavior of GNLV's employees in these circumstances was anything other than "reasonable." We perceive no breach of the duty owed to Sturms in failing to perform the Heimlich maneuver. Accordingly, although GNLV's employees owed a duty to Sturms to act reasonably, we are able to conclude as a matter of law that GNLV's employees did not breach this duty.

## CONCLUSION

We conclude that, under the circumstances presented in this case, GNLV's employees acted reasonably as a matter of law by rendering medical assistance to Sturms and summoning professional medical aid within a reasonable time. In this case, GNLV's employees were under no legal duty to administer the Heimlich maneuver to Sturms. Therefore, we affirm the district court's grant of summary judgment in favor of GNLV.

SHEARING and LEAVITT, JJ., concur.