ROY SPARKS AND ANDREA SPARKS, HUSBAND AND WIFE; AND ROY SPARKS, III, BY AND THROUGH HIS GUARDIAN AD LITEM, ROY SPARKS, APPELLANTS, v. THE ALPHA TAU OMEGA FRATERNITY, INC., A MARYLAND CORPORATION; ALPHA TAU OMEGA ETA EPSILON CHAPTER, UNLV, AN UNIDENTIFIED ENTITY; DOUG FOLEY, ITS PRESIDENT; ALPHA TAU OMEGA DELTA IOTA CHAPTER, UNR, AN UNIDENTIFIED ENTITY; ROBERT ROJAS, ITS PRESIDENT; ALPHA TAU OMEGA NEVADA SOUTHERN ALUMNI ASSOCIATION; UNIVERSITY OF NEVADA ALUMNI ASSOCIATION, INC.; JULIE ARDITO, ITS PRESIDENT; AND SOUTHERN NEVADA YOUNG ALUMNI CHAPTER, RESPONDENTS.

No. 50668

May 26, 2011                                    255 P.3d 238

[Rehearing denied September 29, 2011]
[En banc reconsideration denied December 20, 2011]

*Sterling Law, LLC*, and *Beau Sterling* and *Richard Vilkin*, Las Vegas; *Simon Law Office* and *Daniel S. Simon*, Las Vegas, for Appellants.

*Maupin, Cox & LeGoy* and *Michael E. Malloy* and *Carolyn K. Renner*, Reno, for Respondents University of Nevada Alumni Association, Inc.; Julie Ardito; and Southern Nevada Young Alumni Chapter.

*Stephenson & Dickinson* and *Bruce Scott Dickinson* and *Michael E. Hottman*, Las Vegas, for Respondents Alpha Tau Omega Fraternity, Inc.; Alpha Tau Omega Eta Epsilon Chapter, UNLV; Doug Foley; Alpha Tau Omega Delta Iota Chapter, UNR; Robert Rojas; and Alpha Tau Omega Nevada Southern Alumni Association.

Before DOUGLAS, C.J., PICKERING and HARDESTY, JJ.

## OPINION

By the Court, HARDESTY, J.:

Appellant Roy Sparks and Jeffrey Clack engaged in a fight during a college football tailgate event that resulted in an injury to Roy. Roy and his wife, appellant Andrea Sparks, filed suit against Clack and a number of other entities allegedly involved with the tailgate event, asserting several causes of action, including negligence and intentional torts. The Sparkses also named fictitious Doe and Roe defendants because they did not know the true identity of all of the potentially liable parties. Eventually, the Sparkses attempted to substitute the UNR Alumni Association, Inc., Julie Ardito, and the Southern Nevada Young Alumni Chapter (collectively, the Alumni respondents) in place of the fictitious Doe and Roe defendants. The district court dismissed claims against the Alumni respondents based on the statute of limitations and granted summary judgment in favor of the other entities. The Sparkses appealed.

In this appeal, we address three main issues: (1) whether the Sparkses exercised reasonable diligence under *Nurenberger Hercules-Werke v. Virostek*, 107 Nev. 873, 822 P.2d 1100 (1991), in ascertaining the identities of the Doe and Roe defendants, such that their amended complaint could relate back to the date that they filed the first complaint, pursuant to NRCP 10(a); (2) whether respondents Alpha Tau Omega Fraternity, Inc. (ATO National); Alpha Tau Omega Eta Epsilon Chapter (ATO-UNLV); Doug Foley, president of ATO-UNLV; Alpha Tau Omega Delta Iota Chapter, UNR (ATO-UNR); Robert Rojas, president of ATO-UNR; and Alpha Tau Omega Nevada Southern Alumni Association (ATO-NSAA) (collectively, the ATO respondents) owed a duty of care to the Sparkses, which is needed to proceed with their negligence claims; and (3) whether a factual dispute exists as to the ATO respondents' exercise of control over Clack or subsequent ratification of his actions sufficient to hold them liable for his intentional torts, if any. After explaining what constitutes reasonable diligence under the third element of the *Nurenberger* test, we conclude that the Sparkses did not exercise reasonable diligence in ascer-

taining the identities of the Doe and Roe defendants and, thus, the statute of limitations ran on their causes of action against the Alumni respondents. We further conclude that the ATO respondents owed no duty of care to the Sparkses and did not possess the ability to control Clack or ratify his actions sufficient to be held liable for Clack's intentional torts. Therefore, we affirm.

## FACTS

In October 2002, prior to a football game between the University of Nevada, Reno (UNR) and the University of Nevada, Las Vegas (UNLV) in Las Vegas, the Sparkses and some of their friends had a birthday party for the Sparkses' son in a designated family tailgate area at Sam Boyd Stadium. Clack and a group of his friends attended a separate tailgate gathering across from the Sparkses, in a section reserved by respondents University of Nevada Alumni Association, Inc. (UNR Alumni Association), and the Southern Nevada Young Alumni Chapter (SNYAC). Also present at the tailgate gathering were members of ATO-UNR and ATO-UNLV.

After their son's birthday party, the Sparkses returned to their vehicle to put away gifts and the birthday cake. Clack and two other young men gathered near the Sparkses' car, and Andrea asked them to get off the car. Roy then repeated Andrea's request, after which an altercation ensued. At some point during the brief fracas, Clack bit off a piece of Roy's nose. Roy has since had two surgeries to repair the damage caused by the bite.

In February 2004, the Sparkses filed a complaint against Clack, UNLV Foundation, UNLV, Sam Boyd Silver Bowl, Sam Boyd Stadium, Greek Life at UNLV, Alpha Tau Omega Chapter, ATO-NSAA, and unnamed Doe and Roe corporation defendants. The Sparkses then amended their complaint to add ATO-UNLV and its president Doug Foley, ATO-UNR and its president Robert Rojas, and ATO National as defendants.

During the course of discovery, which lasted for over a year, the Sparkses learned that the UNR Alumni Association was the party responsible for the tailgate function, and that SNYAC was the party responsible for arranging pre-game transportation to the stadium for Clack and other attendees. In July 2006, over two years after filing their initial complaint, the Sparkses moved for and were granted leave to file a second amended complaint to substitute the UNR Alumni Association, its president, Julie Ardito, and SNYAC for unnamed Doe and Roe defendants, pursuant to NRCP 10(a).[1] Almost eight months after the motion was granted, the Sparkses

---

[1] NRCP 10(a) provides, in pertinent part, that "[a] party whose name is not known may be designated by any name, and when the true name is discovered, the pleading may be amended accordingly."

filed their second amended complaint, which added claims against the three UNR Alumni respondents.

The Alumni respondents did not answer the complaint but instead filed a motion to dismiss or, in the alternative, for summary judgment. Among other arguments, the Alumni respondents asserted that the two-year statute of limitations had expired for the Sparkses' claims. Moreover, according to the Alumni respondents, the Sparkses had not satisfied the elements that must be met for an amended complaint to relate back to the filing date of the initial complaint set forth by this court in *Nurenberger Hercules-Werke v. Virostek*, 107 Nev. 873, 822 P.2d 1100 (1991).[2] Following a hearing, the district court granted the Alumni respondents' motion, granting summary judgment in favor of the UNR Alumni Association, Ardito, and SNYAC. The district court concluded that the Sparkses failed to satisfy the third *Nurenberger* requirement, which is "exercising reasonable diligence in ascertaining the true identity of the intended defendants and promptly moving to amend the complaint in order to substitute the actual for the fictional," and that the statute of limitations had expired. *Id.* at 881, 822 P.2d at 1106.

The ATO respondents[3] answered the complaint and later moved for summary judgment. The motion rested on four grounds: (1) "[n]either Mr. Sparks nor Mr. Clack were members of ATO or otherwise under the control of ATO at the time of the fight"; (2) the tailgate area was not subject to ATO's control; (3) "ATO did not direct, authorize or ratify the actions of Mr. Clack"; and (4) "[n]either Robert Rojas nor Doug Foley were the president of ATO-UNR or ATO-UNLV, respectively, at the time the fight occurred."

The Sparkses opposed the motion on numerous grounds, including, among others, that because ATO-UNLV, ATO-UNR, ATO National, and ATO-NSAA failed to supervise their ATO members, they were responsible for their members' various actions; and "ATO-UNR and ATO-UNLV directed, authorized and ratified the actions of Mr. Clack." The district court granted the ATO respon-

---

[2]The three-part test established in *Nurenberger* allows an amended complaint to relate back to the filing date of the initial complaint if the plaintiff:

> (1) plead[s] fictitious or doe defendants in the caption of the complaint;
> (2) plead[s] the basis for naming defendants by other than their true identity, . . . ; and (3) exercis[es] reasonable diligence in ascertaining the true identity of the intended defendants and promptly mov[e] to amend the complaint in order to substitute the actual for the fictional.

107 Nev. 873, 881, 822 P.2d 1100, 1106 (1991).

[3]The Sparkses also named Alpha Tau Omega Chapter in their complaint; however, the ATO respondents indicate that the Sparkses never effected service upon Alpha Tau Omega, and that party has not appeared in the lower court. Additionally, the Sparkses named various other entities with whom they later settled.

dents' motion for summary judgment, finding that the Sparkses failed to show any genuine issues of material fact and, therefore, the ATO respondents were entitled to judgment as a matter of law. This appeal followed.

## DISCUSSION

In this appeal, we must initially determine whether, prior to amending their complaint pursuant to NRCP 10(a), the Sparkses exercised reasonable diligence in ascertaining the identities of the Doe and Roe defendants. In doing so, we explain what constitutes reasonable diligence under the third element of the *Nurenberger* test and, based on that explanation, we conclude that the district court properly dismissed the Alumni respondents because the Sparkses did not exercise reasonable diligence in ascertaining the identity of the Doe and Roe defendants.

We then examine the duty of care, if any, the ATO respondents owed to protect the Sparkses from Clack and whether the ATO respondents exercised sufficient control over Clack or subsequently ratified his actions, making them liable for any intentional torts. We conclude that the ATO respondents did not owe a duty to protect the Sparkses and that they are not liable for Clack's intentional torts.

### The district court did not err in granting summary judgment in favor of the Alumni respondents

#### Standard of review

The alumni respondents filed a "motion to dismiss or in the alternative for summary judgment." The district court granted this motion "in its entirety," but did not specify which motion it granted. Where the court considers matters outside the pleadings, such as affidavits, we treat the motion as a motion for summary judgment. *Stevens v. McGimsey*, 99 Nev. 840, 841, 673 P.2d 499, 500 (1983); *see also MacDonald v. Kassel*, 97 Nev. 305, 307, 629 P.2d 1200, 1200 (1981). Here, the district court presumably considered the affidavit of Ardito, which the Alumni respondents attached to their motion. Therefore, the district court effectively treated the motion as a motion for summary judgment pursuant to NRCP 56.

We review a district court order granting summary judgment de novo. *Ozawa v. Vision Airlines*, 125 Nev. 556, 560, 216 P.3d 788, 791 (2009). "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* When reviewing an order

granting summary judgment, this court views the record "in the light most favorable to the nonmoving party." *Delgado v. American Family Ins. Group*, 125 Nev. 564, 571, 217 P.3d 563, 568 (2009). What constitutes "reasonable diligence" under the third element of the *Nurenberger* test is a question of law, subject to de novo review. *Nurenberger*, 107 Nev. at 881, 822 P.2d at 1105; *Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008).

### *Reasonable diligence*

NRCP 10(a) allows a plaintiff to amend his or her complaint to substitute a Doe or Roe defendant with a named party when the true name is discovered. To do so, the plaintiff must meet all elements of the three-part test established in *Nurenberger*. *See* 107 Nev. at 881, 822 P.2d at 1106. If those elements are satisfied, then the amended complaint shall relate back to the date of the filing of the original complaint. *Id.* at 881-82, 822 P.2d at 1106.

Here, the district court granted the Alumni respondents' motion for summary judgment on the grounds that the statute of limitations had expired on the Sparkses' claims against the Alumni respondents,[4] and that the second amended complaint did not relate back to the filing date of the initial complaint because the Sparkses failed to satisfy the third *Nurenberger* requirement.[5]

In *Nurenberger*, we recognized that plaintiffs must proactively seek to identify unknown defendants in order for an amendment made pursuant to NRCP 10(a) to relate back to the filing date of the original complaint, and we therefore included a reasonable diligence requirement as the third factor. 107 Nev. at 881, 822 P.2d at 1105. The reasonable diligence requirement is intended to guard against the abuse of Doe and Roe defendants as placeholders during the commencement of litigation and "was not intended to reward indolence or lack of diligence by giving plaintiffs an automatic method of circumventing statutes of limitations." *Id.* However, this court has not addressed what constitutes reasonable diligence in the context of satisfying the *Nurenberger* requirements

---

[4]Roy suffered his injuries on October 5, 2002; thus, the two-year statute of limitations "for injuries . . . caused by the wrongful act or neglect of another," NRS 11.190(4)(e), expired on October 5, 2004. The Sparkses do not challenge the district court's determination that the statute of limitations had expired by April 6, 2007, when the second amended complaint naming the Alumni respondents was filed.

[5]The district court's specification that the Sparkses failed to satisfy the third requirement implies that the first two requirements were satisfied. Moreover, the Alumni respondents failed to respond to the Sparkses' arguments regarding the first two *Nurenberger* requirements, so we do not address them. Consequently, we examine the third requirement only.

when amending a complaint pursuant to NRCP 10(a). Thus, we take this opportunity to examine *Nurenberger*'s "reasonable diligence" requirement.

Other jurisdictions have addressed similar diligence requirements for allowing amended pleadings to relate back based on the substitution of actual parties for fictitious defendants. The decisions from these other jurisdictions are instructive and provide factors that we determine district courts in Nevada should consider when evaluating whether a party has exercised reasonable diligence in ascertaining the identity of a defendant. Such factors include whether the party unreasonably delayed amending the pleadings to reflect the true identity of a defendant once it became known, *Ensey v. Culhane*, 727 A.2d 687, 690 (R.I. 1999); whether the plaintiff utilized " 'judicial mechanisms such as discovery' " to inquire into a defendant's true identity, *Price v. Clark*, 21 So. 3d 509, 526 (Miss. 2009) (quoting *Rawson v. Jones*, 816 So. 2d 367, 369 (Miss. 2001)); and whether a defendant concealed its identity or otherwise obstructed the plaintiff's investigation as to its identity, *Fazzalare v. Desa Industries, Inc.*, 351 N.W.2d 886, 893 (Mich. Ct. App. 1984) (Beasley, J., dissenting). These factors are not exhaustive.

Here, the district court found that the Sparkses did not exercise reasonable diligence in ascertaining the identity of the Alumni respondents. The Sparkses filed their initial complaint in February 2004, and discovery commenced with the filing of the joint case conference report in December 2004. Over one year and seven months later, in July 2006, the Sparkses learned that the Alumni respondents had organized the tailgate gathering and filed a motion to amend their complaint to substitute the Doe and Roe defendants with the Alumni respondents. The Sparkses then waited almost eight more months after the district court granted their motion to finally file the amended complaint.

On appeal, the Sparkses explain that the reason for the delay in ascertaining the true defendants was that their trial attorney "was frustrated in discovery by a complex set of facts brought on by the nature of the various fraternity, university and alumni organizations involved with the event . . . and witnesses who claimed memory loss and frustrated the investigation." However, they do not identify which witnesses were not forthcoming or how their discovery of the Alumni respondents was impeded, and they offer no explanation for their eight-month delay in filing the amended complaint after the district court granted leave to amend. Additionally, the Sparkses took only two depositions from the time discovery commenced in December 2004 until the time they filed the motion to amend their complaint in July 2006. Further, nothing in the

record suggests that the Alumni respondents did anything to hide their true identity or obstruct the Sparkses' investigation of their identity.

Thus, we determine that the Sparkses' inexplicable delay in ascertaining the identity of the Alumni respondents and their failure to promptly amend their complaint once they ascertained the proper identity of the Alumni respondents demonstrates a lack of reasonable diligence. Therefore, the district court correctly found that the Sparkses failed to satisfy the third element of the *Nurenberger* test, the amended complaint could not relate back to the filing date of the initial complaint, and the statute of limitations had run as to the causes of action alleged against the Alumni respondents, making summary judgment appropriate.

*The district court did not err in granting the ATO respondents' motion for summary judgment*

The Sparkses argue that the district court erred in granting summary judgment in favor of the ATO respondents because a special relationship created a duty of care owed to them. After carefully reviewing the briefs on appeal, it is unclear what special relationship the Sparkses claim exists. We conclude that neither ATO National nor the local ATO chapters had a special relationship with the Sparkses to give rise to a duty of care.

### Standard of review

Whether a defendant was negligent is generally "a question of fact for the jury," and thus, this court is hesitant "to affirm summary judgment in negligence cases." *Rodriguez v. Primadonna Company*, 125 Nev. 578, 584, 216 P.3d 793, 798 (2009). However, a defendant is entitled to summary judgment if the plaintiff cannot recover as a question of law. *Id.* "[T]he question of whether the defendant owes the plaintiff a duty of care is a question of law," and thus, "if this court determines that no duty exists, it will affirm summary judgment." *Id.*

### The ATO respondents do not have a special relationship with the Sparkses such that the ATO respondents owe the Sparkses a duty of care

A plaintiff alleging negligence must demonstrate "(1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages." *Sanchez v. Wal-Mart Stores*, 125 Nev. 818, 824, 221 P.3d 1276, 1280 (2009). Generally, "no duty is owed to control the dangerous conduct of another." *Id.* However, Nevada recognizes an exception to the general rule, and a duty of

care arises "when (1) a special relationship exists between the parties . . . , and (2) the harm created by the defendant's conduct is foreseeable." *Id.* at 824, 221 P.3d at 1280-81.

A crucial factor in establishing liability in the context of special relationships between national and local fraternity chapters and a third party is "the element of control." *Scialabba v. Brandise Constr. Co.*, 112 Nev. 965, 969, 921 P.2d 928, 930 (1996). In *Scialabba*, we noted that the rationale for imposing liability when one party controls another is that:

> [S]ince the ability of one of the parties to provide for his own protection has been limited in some way by his submission to the control of the other, a duty should be imposed upon the one possessing control (and thus the power to act) to take reasonable precautions to protect the other one from assaults by third parties which, at least, could reasonably have been anticipated.

*Id.* (alteration in original) (internal quotation omitted). Such ability to exercise control "must be real and not fictional and, if exercised, would meaningfully reduce the risk of the harm that actually occurred." *Grand Aerie Fraternal Order v. Carneyhan*, 169 S.W.3d 840, 851 (Ky. 2005). In the absence of this degree of control, "there is no special relationship giving rise to a duty of reasonable care." *Id.* at 853. In order to determine whether a special relationship existed such that any of the ATO respondents owed a duty of care to the Sparkses, we must separately examine the relationship between the national organization and the Sparkses, and the relationship between the local chapters and the Sparkses. ATO National can be liable only if it had some duty to monitor or control its local chapters.

### Relationship between ATO National and the Sparkses

Although this court has not previously addressed whether there is a special relationship between a national fraternity and a third party, such that the national fraternity owes a duty to control the conduct of the local chapter and could be held liable for harm caused to a nonmember by a third party guest, other courts have addressed similar questions. In *Alumni Ass'n v. Sullivan*, the Pennsylvania Supreme Court considered a national organization's relationship to a local chapter. 572 A.2d 1209, 1209-10 (Pa. 1990). In that case, a freshman college student drank alcohol that was provided at parties hosted by both his dormitory and a local chapter of Sigma Chi Fraternity (of which he was not a member). *Id.* At some point, a fire was set at a neighboring fraternity, Lambda Chi

Alpha, allegedly by the student. *Id.* at 1210. Thereafter, the neighboring fraternity sued the student and Sigma Chi for negligently providing him with alcohol. *Id.* In declining to extend Pennsylvania's social-host doctrine,[6] the court concluded that the national fraternity did not owe a duty to monitor the everyday activities of its local chapters. *Id.* at 1211, 1213. The court reasoned that "[t]he national organization in fraternal groups has only the power to discipline an errant chapter after the fact. It does not possess the resources to monitor the activities of its chapters contemporaneously with the event." *Id.* at 1213; *see also Carneyhan*, 169 S.W.3d at 854 (concluding that because the local chapter's ability to conduct its social functions was not controlled at all by the national organization, "no special relationship existed giving rise to a duty on the part of the [national organization] to exercise reasonable care to control [the local chapter]"); *Colangelo v. Tau Kappa Epsilon Fraternity*, 517 N.W.2d 289, 292 (Mich. Ct. App. 1994) (concluding that "impos[ing] a duty upon the national fraternity to supervise the daily activities of its local chapters" would be impractical and would result in a significant increase in operating costs).

The imposition of a duty on ATO National is likewise not warranted here. In their second amended complaint before the district court and in their briefs on appeal, the Sparkses fail to differentiate between ATO National and ATO-UNR and ATO-UNLV. Rather, they argue broadly that the ATO respondents "had a duty to control and supervise their guests." However, the Sparkses fail to provide any rationale for placing responsibility on ATO National to control and supervise a tailgate party, even if it had been hosted by or in an area reserved by a local ATO chapter. Thus, like the Pennsylvania Supreme Court, and based on the facts presented in this case, we are not persuaded that a national fraternal organization has a duty to supervise the everyday activities of its local chapters. Accordingly, we conclude that a special relationship did not exist, and that ATO National did not owe a duty to the Sparkses to protect them from injury caused by a third party.

### Relationship between ATO-UNR and ATO-UNLV and the Sparkses

As noted above, ATO-UNR or ATO-UNLV owed a duty to the Sparkses only if a special relationship existed between the frater-

---

[6]Pennsylvania's social-host doctrine holds social hosts liable when they " 'knowingly furnish[ ]' alcoholic beverages to a minor." *Alumni Ass'n v. Sullivan*, 572 A.2d 1209, 1211-12 (Pa. 1990).

nities and the Sparkses. Whether such a relationship existed depends upon the level of actual control the local chapters exerted over the Sparkses or over Clack.

We have previously concluded that special relationships giving rise to a duty of care include, but are not limited to, those between "an innkeeper-guest, teacher-student [and] employer-employee," as well as "a restaurateur and his patrons." *Lee v. GNLV Corp.*, 117 Nev. 291, 295-96, 22 P.3d 209, 212 (2001). Other courts have also recognized "landowner-invitee, businessman-patron . . . school district-pupil, hospital-patient, and carrier-passenger" relationships. *Scialabba*, 112 Nev. at 969, 921 P.2d at 930.

The sole relationship cited by the Sparkses on appeal as existing between them and the ATO respondents is that of "landowner/possessor-invitee." We disagree. First, there is no such relationship present between the ATO respondents and the Sparkses, as the Sparkses were not invitees of the ATO respondents. This fact is critical because, as explained in *Scialabba*, the reason behind imposing a duty in a landowner-invitee relationship is that the invitee's ability to protect himself "has been limited in some way by his submission to the control of the other, [such that] a duty should be imposed upon the one possessing control." *Id.* (internal quotation omitted). As the Sparkses were not invitees and thus did not submit themselves to the control of the ATO respondents, the Sparkses' argument fails.

Furthermore, even assuming, without deciding, that a duty to the Sparkses under a "landowner/possessor-invitee" relationship could exist based on the fact that Clack was an invitee of the ATO respondents, such a duty would not apply here. While "[a] land owner or occupier owes a duty to the people on the land to act reasonably under the circumstances," *Rockwell v. Sun Harbor Budget Suites*, 112 Nev. 1217, 1228, 925 P.2d 1175, 1182 (1996), the altercation at issue in this matter occurred in an area not controlled by the ATO respondents. Thus, even under this potential theory, the ATO respondents had no duty to control Clack outside of their tailgate area.

*The ATO respondents are not liable for Clack's intentional torts*

Finally, the Sparkses contend that the ATO respondents, as associations, even if they were not themselves negligent, should be liable for Clack's intentional torts because they ratified Clack's actions. But an association cannot be liable for the "tortious acts of

a person . . . where such person is not under the control of the association, or subject at the very time to its right to control his or her acts.'' 6 Am. Jur. 2d *Associations and Clubs* § 45 (2008). Moreover, even if the wrongdoer is a member of the association, the association will not be liable for his or her intentional torts ''[a]bsent authorization or ratification by the [other] members of [the] association.'' *Id.* Clack was not under the control of the ATO respondents, and he was not a member of that organization. Therefore, the ATO respondents are not liable for his intentional torts.

Although this court has not previously addressed whether a fraternity is liable for the intentional torts of its members or guests, the Alabama Supreme Court addressed a similar issue. In *Rothman v. Gamma Alpha*, a fight occurred between several members of the Gamma Fraternity and the Delta Fraternity on the Delta Fraternity's premises. 599 So. 2d 9, 10 (Ala. 1992). One of the injured Delta members filed suit against Gamma and two of its members. *Id.* The court concluded that summary judgment in favor of Gamma was proper because the appellants failed to present evidence demonstrating that ''Gamma encouraged, authorized, or subsequently ratified the actions of its members during the fight.'' *Id.* at 11. It was inconsequential to the court that the Gamma members involved in the fight were not subsequently punished by Gamma because that lack of punishment was not evidence of ratification. *Id.* The court further stated that Gamma did not ''owe[ ] a duty to [appellants] to control the conduct of its members.'' *Id.*

Here, the Sparkses presented no evidence that the ATO respondents controlled Clack or ratified his violent behavior. In their opposition to the motion for summary judgment, the Sparkses argued only that the ATO respondents ''encouraged Clack when they surrounded the Plaintiffs.'' On appeal, they merely contend that, unlike the scenario in *Rothman*, here the ATO respondents ratified Clack's actions when the ATO-UNR officers suffered memory loss when giving their statements to the police. According to the Sparkses, concealing information is evidence of ratification after the fact. However, the vice president of ATO-UNR called the police back 30 minutes after his first interview to provide them with Clack's name, indicating an inconsequential delay that does not create a genuine issue of material fact regarding ratification. Furthermore, the fight broke out unexpectedly and ended after only a few seconds, so in this instance, the ATO respondents had no time to ratify the behavior as it was occurring. *Cf. Nittinger v. Holman*, 119 Nev. 192, 194, 197, 69 P.3d 688, 690, 692 (2003) (concluding that a jury could find that a security guard who witnessed other security guards beat a patron, chase him down, and continue beating him ratified their actions by failing to intervene). Therefore, we conclude that the ATO respondents are not liable for

Clack's intentional torts because they did not have an ability to control Clack and, even if they could be held liable based on their ratification of a nonmember's actions, there exists no genuine dispute of material fact that they did not subsequently ratify Clack's actions.

For the reasons set forth above, we affirm the district court's grant of summary judgment in favor of the Alumni and ATO respondents.

DOUGLAS, C.J., and PICKERING, J., concur.